COMMONWEALTH *vs.* JAMAAL J. THOMAS & another.[1]

Suffolk. February 8, 2008. - May 20, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Practice, Criminal,* Discovery. *Evidence,* Exculpatory, Statistics, Traffic citation.

A District Court judge erred in directing the Commonwealth to produce to the criminal defendants statistical data to be derived by the Commonwealth from uniform motor vehicle citations and other information issued by the State trooper who arrested the defendants after a traffic stop, where the defendants sought information, materials, and data that were not within the trooper's possession and control but were possessed by others who were not part of the prosecution of the defendants' cases, namely, the colonel of the State police and the registry of motor vehicles, and where the defendants sought to compel the Commonwealth to ascertain unspecified "other information" and to engage in legal and judgmental evaluations as to its relevance. [453-455]

Discussion of the appropriate vehicle by which a criminal defendant, who has reason to believe that he or she was subjected to a discriminatory traffic stop, might obtain statistical evidence required to demonstrate that the traffic stop was made on the basis of race or ethnicity. [455-456]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 3, 2007.

The case was reported by *Cowin,* J.

*Steven S. Epstein* for the defendant.

*Michelle R. King,* Assistant District Attorney, for the Commonwealth.

*Ian Stone,* for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GREANEY, J. At issue is an order of a District Court judge directing the Commonwealth to produce to the defendants "statistical data" to be derived by the Commonwealth from uniform motor vehicle citations (and other information). The citations were issued by the State trooper who arrested the

___

[1]Michael J. MacDonald.

defendants after a traffic stop. The Commonwealth, asserting that the information is not subject to discovery under Mass. R. Crim. P. 14 (a) (1) (A), as amended, 444 Mass. 1501 (2005), because it is not in the prosecutor's "possession, custody or control," sought relief from the judge's order by filing a petition pursuant to G. L. c. 211, § 3, in the county court. A single justice reserved and reported the case, without decision. We vacate the order.

The background of the case is follows. On September 29, 2006, the defendant Jamaal J. Thomas was charged with possession of marijuana with the intent to distribute, G. L. c. 94C, § 32C (*a*), and with two civil motor vehicle infractions, namely, speeding, G. L. c. 90, § 17; and failure to operate in the right travel lane, G. L. c. 89, § 4B. The defendant Michael J. MacDonald was charged with possession of marijuana with the intent to distribute, G. L. c. 94C, § 32C (*a*).

The charges against the defendants, who are black, resulted from a traffic stop on Route 84 in Sturbridge that had occurred the previous day, and were based on allegations contained in the narrative section of the arrest report of State Trooper Russell Patenaude. The report provides as follows. At about 7:54 P.M., on September 28, 2006, Trooper Patenaude was on patrol on Route 84. He observed an automobile speeding in the left passing lane. He followed the automobile for about one mile, clocking its speed between eighty and eighty-four miles per hour, which exceeded the speed limit. The automobile also remained in the left passing lane despite ample opportunity to move into the right travel lane. Trooper Patenaude activated the lights on his police cruiser, and the automobile pulled over.

As Trooper Patenaude asked the driver, the defendant Thomas, for his license and registration, he detected an odor of fresh marijuana coming from the automobile. He observed that the eyes of the passenger (MacDonald) were glassy and that MacDonald's torso began to shake. The defendants denied smoking any marijuana. MacDonald said he had never used drugs, then began to stutter and continued to shake. Thomas told Trooper Patenaude that he did not smoke marijuana, and he denied that MacDonald had smoked marijuana in the automobile. Trooper Patenaude moved the defendants to his cruiser.

Trooper Patenaude's subsequent search of the automobile revealed a suitcase and a plastic bag filled with marijuana in the trunk. The plastic bag was open, and sticking out of it were "three large ziplock bags," each containing about one-half pound of marijuana. The suitcase contained ten additional bags, each containing about one-half pound of marijuana. Approximately six and one-half pounds of marijuana were seized.[2]

The defendants were arrested and advised of their Miranda rights. Trooper Patenaude asked Thomas if he was going to sell the marijuana. Thomas replied that it was for personal use. Thomas also stated that MacDonald did not know about the drugs.

After being charged, the defendants, claiming that they were seeking "possibly exculpatory" information, filed motions for discovery, pursuant to rule 14 (a) (1) (A) (iii), of Trooper Patenaude's citation books, audit sheets, and "any other information" concerning whether Trooper Patenaude had engaged in "profiling, stereotypical thinking and hunches, or [had] used dubious investigative techniques." The defendants sought the data and information from the effective date of St. 2000, c. 228, "An Act providing for the collection of data relative to traffic stops" (Act),[3] through the present. The judge "allowed" the motions without specification, and ordered the Commonwealth to produce "[s]tatistical data only," with "names and addresses redacted." The judge denied the Commonwealth's motion to reconsider. The Commonwealth then sought relief in the county court.

1. Under rule 14 (a) (1) (A) (iii), the Commonwealth's obligation to furnish discovery of exculpatory material is limited to facts and information "relevant to the case and . . . in the pos-

---

[2]Relying on the certificate of analysis of the substance seized, the defendants point out that the marijuana was stored in "heat-sealed" packages. Their point appears to be that, because of the heat-sealed packages, Trooper Patenaude could not have detected an odor of marijuana. This contention does not bear on the issue before us.

[3]The Act was approved with the purpose of "ensur[ing] that adequate efforts are being made to identify and eliminate any instances of racial and gender profiling by police officers in the performance of their official duties." *Boston Police Patrolmen's Ass'n* v. *Police Dep't of Boston*, 446 Mass. 46, 47 (2006).

session, custody or control of the prosecutor, persons under the prosecutor's direction and control, or persons who have participated in investigating or evaluating the case and either regularly report to the prosecutor's office or have done so in the case." It is clear that "[t]he prosecutor's duty does not extend beyond information held by agents of the prosecution team." *Commonwealth* v. *Beal*, 429 Mass. 530, 532 (1999).

The defendants argue that Trooper Patenaude and his employer, the State police, are part of the "prosecution team," and that the discovery is obtainable because Trooper Patenaude and the State police are obligated to maintain the data sought. To support this contention, the defendants point to provisions of the Act that require the compilation, by the registry of motor vehicles, of statistical data on citations issued by police. See St. 2000, c. 228, §§ 8, 9.[4] See also *Boston Police Patrolmen's Ass'n* v. *Police Dep't of Boston*, 446 Mass. 46, 47-49 (2006) (for overview of Act and its purposes). The defendants also rely on various statutory provisions, including G. L. c. 90C, §§ 1, 2 and 4, which direct a police officer who issues a motor vehicle citation to retain a copy of the citation, and require the officer's police chief, here the colonel of the State police, also to retain a copy; and G. L. c. 90C, §§ 1 and 6, which require the colonel of the State police to maintain "audit sheets," which list citations issued from each individual citation book and the disposition of the citations.

The defendants' motions should have been denied. While Trooper Patenaude's citation books are obviously within his possession and control, the motions sought information, materials, and data, over an approximate six-year time period, which

---

[4]Section 8 of St. 2000, c. 228, charges the registry of motor vehicles with collecting the following data from issued citations:

"(1) identifying characteristics of the individuals who receive a warning or citation or who are arrested, including the race and gender of the individual;

"(2) the traffic infraction;

"(3) whether a search was initiated as a result of the stop; and

"(4) whether the stop resulted in a warning, citation or arrest."

Section 9 of St. 2000, c. 228, states that "[i]ndividual data acquired . . . shall be used only for statistical purposes and may not contain information that may reveal the identity of any individual who is stopped or any law enforcement officer."

were *not* within Patenaude's possession and control and were possessed by others who, under the *Beal* standard, are not part of the prosecution of the defendants' cases, namely, the colonel of the State police and the registry of motor vehicles. See *Commonwealth* v. *Daye*, 411 Mass. 719, 734 (1992). See also *Commonwealth* v. *Wanis*, 426 Mass. 639, 643 (1998). Moreover, the motions sought to compel the Commonwealth to ascertain unspecified "other information" and to engage in legal and judgmental evaluations to ascertain if Trooper Patenaude had engaged in "profiling, stereotypical thinking and hunches, or [had] used dubious investigative techniques." The order entered on the motions allowed them in general terms and then directed the Commonwealth to formulate "[s]tatistical data only." It is not the Commonwealth's obligation, when faced with motions of the type filed here, to attempt to ascertain what might be properly discoverable. The motions were vague and overbroad as to much of the material being sought. The Commonwealth cannot be ordered to respond to discovery motions by the defendants to conduct statistical analysis of information that is not in its possession, custody, or control or to make legal evaluations about unspecified "other information" that may or may not be relevant.

2. In *Commonwealth* v. *Lora*, *ante* 425, 436-438 (2008), we discussed the practice of selective enforcement of traffic laws based on race or ethnicity, and held that valid statistical evidence of such impermissible profiling may be relevant and material to demonstrate that a particular traffic stop was unlawful. The *Lora* decision did not address the procedure by which a defendant may, through discovery rules, obtain the data necessary to formulate such statistical evidence, because that issue was not present in the case.

In *Commonwealth* v. *Betances*, *post* 457, 462 n.6 (2008), also decided today, we suggest that a properly presented and documented motion under Mass. R. Crim. P. 14 (a) (2), as appearing in 442 Mass. 1518 (2004), may be an appropriate vehicle by which a defendant, who has reason to believe that he or she was subjected to a discriminatory traffic stop, may obtain statistical evidence required, under the *Lora* decision, to demonstrate that the traffic stop was made on the basis of race or ethnicity.

This suggestion is in accord with what we stated in *Commonwealth* v. *Oliveira*, 438 Mass. 325, 339 (2002): "a defendant does not have an unlimited right to summons witnesses and documents in advance of trial, but may only do so after making a threshold showing of relevance" pursuant to rule 14 (a) (2). We noted in the *Oliveira* decision that, while rule 14 (a) (2) pertains to evidence " 'within the possession, custody, or control of the prosecutor or persons under his direction and control,' it is Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979), that allows the defendant to summons 'books, papers, documents, or other objects' from third parties. However, such a summons may not be used 'to subvert the provisions of rule 14.' . . . As such, the rule 14 (a) (2) requirement that the evidence sought must be 'material and relevant' extends to discovery summonsed from third parties pursuant to rule 17 (a) (2)." *Id.* at 339 n.15, quoting Mass. R. Crim. P. 14 (a) (2), 378 Mass. 874 (1979), and Mass. R. Crim. P. 17 (a) (2). See *Commonwealth* v. *Lampron*, 441 Mass. 265 (2004). We have no need to address either rule in this case, because, as has been discussed, the defendants' motions were deficiently framed and the order entered on them was erroneous.

3. The case is remanded to the county court for the entry of a judgment vacating the order of the District Court compelling the discovery, and for the entry of an order denying the defendants' motions. The defendants' request for an award of appellate attorney's fees and costs is denied.

*So ordered.*