COMMONWEALTH *VS.* NATHANAEL A. BETANCES.[1]

Suffolk. February 8, 2008. - May 20, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*Practice, Criminal,* Discovery. *Evidence,* Exculpatory, Police report, Statistics.

This court concluded that the Commonwealth is not required, as part of
     mandatory discovery authorized by Mass. R. Crim. P. 14, to furnish a
     criminal defendant with "police department reports" relating to all motor
     vehicle stops conducted during a specified, reasonable period by the State
     trooper who stopped the defendant's vehicle (reports that were within the
     possession, custody, and control of the trooper, who as the arresting officer
     was an anticipated prosecution witness), in the absence of a preliminary
     showing by the defendant that a reasonable basis exists to require the
     information sought, i.e., that the trooper, at the time he stopped the
     defendant's vehicle, might have been engaged in selective enforcement of
     the traffic laws. [460-462]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on July 24, 2007.

The case was heard by *Cowin,* J.

*Michelle R. King,* Assistant District Attorney, for the
Commonwealth.

*Leslie Feldman-Rumpler* for the defendant.

GREANEY, J. In issue is an order of a Superior Court judge
directing the Commonwealth, as part of discovery authorized by
Mass. R. Crim. P. 14, as amended, 444 Mass. 1501 (2005), to
furnish the defendant with "police department reports" relating
to all motor vehicle stops conducted by a State trooper, during
the period from January 1, 2006, to July 31, 2006. We vacate
the order.

1. The issue arose as follows. At approximately 10:30 A.M. on
July 15, 2006, after slowing his police cruiser to offer assistance
to a vehicle in the breakdown lane of Route 84 in Sturbridge,

---

[1]As is our practice, we spell the defendant's name as it appears in the
indictments.

Trooper Sean P. Maher was reentering the flow of traffic when he noticed a black Nissan automobile approach his vehicle in the left lane. The Nissan was traveling at a speed in excess of seventy-five miles per hour. Trooper Maher watched the Nissan pass his cruiser, brake suddenly, pull into the center lane (causing another vehicle to brake hard to avoid hitting the Nissan), and begin to follow a Ryder rental truck at a distance of less than one car length. Trooper Maher activated the lights on his cruiser and signaled the driver of the Nissan (the defendant) to pull over.

While asking the defendant for his license and motor vehicle registration, Trooper Maher noticed an overwhelming odor of air freshener. He also detected the odor of burnt marijuana, mixed with the air freshener, emanating from the interior of the vehicle. There were cigar shavings on the front passenger floor and, next to the shavings, a small piece of green leafy substance that Maher recognized as marijuana. A criminal check on the defendant revealed a felony arrest in New Jersey. After reciting the Miranda warnings, Trooper Maher advised the defendant that he had observed marijuana in the vehicle and received the defendant's consent to search the vehicle. In the rear panel of the front passenger seat, Trooper Maher observed what, based on his training and experience, was an "after market electronic hide, which in all likelihood contained narcotics." Continuing his search, Trooper Maher removed three duct-taped packages from the right front passenger seat. Inside the packages were clear plastic bags containing a brown substance consistent with heroin. The defendant was arrested.[2]

On July 17, complaints issued from the Dudley Division of the District Court Department charging the defendant with a marked lanes violation, possession of marijuana, and trafficking in heroin. On November 8, 2006, a grand jury returned indictments charging the defendant with trafficking in heroin in an amount of 200 grams or more; trafficking in cocaine in an amount over twenty-eight grams but less than one hundred grams; and unlawful possession of marijuana.

---

[2]As Trooper Maher was concluding the search, a second State trooper, Michael McCammon, arrived to assist Trooper Maher with the defendant's arrest.

The defendant filed a motion for production of "additional police department reports," seeking, insofar as is relevant to this case, police reports for "all motor vehicle stops conducted by [Trooper] Maher during the period in which the defendant was stopped, January 1, 2006, to July 31, 2006."[3] The Commonwealth opposed the motion. It is apparent from the judge's order that he recognized that the defendant was seeking information that might support a motion to suppress on the basis that the stop of his vehicle was made with an impermissible discriminatory motive (because the defendant is Hispanic). As has been stated, the judge ordered the Commonwealth to make available for inspection "all motor vehicle stops conducted by [Trooper] Maher during the period from January 1, 2006, to July 31, 2006." The order further provided that "[t]he police may, at their discretion, redact identifying information so long as the race of the person stopped is otherwise identified." The

---

[3]The defendant's motion reads:

"Pursuant to *Commonwealth* v. *Lora,* 16 Mass. L. Rptr. 715 (2003), and *Commonwealth* v. *Gonsalves,* 429 Mass. 658 (1999), now comes the Defendant and moves this Honorable Court to direct the Commonwealth, its agents or servants, to make available [for] inspection, copying, or photographing any and all State, county or Police Department reports, including but not limited to:

"(a) all motor vehicle stops conducted by Sean Maher during the period in which the defendant was stopped, January 1, 2006, to July 31, 2006

"(b) all motor vehicle stops conducted by Michael McCammon during the period in which the Defendant was stopped, January 1, 2006 to July 31, 2006

"(c) random sample of twenty-five stops conducted by other troopers from the Sturbridge barracks."

The judge denied the request for reports of stops conducted by Trooper McCammon, noting that he played no role in the stop itself. The judge also denied, without prejudice, the request for a random sample of police reports from the Sturbridge barracks, with the direction that a renewed motion must be accompanied with information supporting the request. The defendant raises no challenge to the judge's denials of these requests, and we do not address them, other than to state that what has been said in *Commonwealth* v. *Thomas, ante* 451, 453-455 (2008), and what will be said in this opinion, applies to all requests by a defendant for production of police reports, other than those connected with the defendant's particular case, sought as support for a motion to suppress evidence based on discriminatory enforcement of traffic laws.

Commonwealth petitioned in the county court for relief pursuant to G. L. c. 211, § 3.[4] A single justice denied the Commonwealth's petition, and the Commonwealth appealed from the single justice's ruling, pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001).

2. We presume that the defendant's request was one for mandatory discovery pursuant to rule 14 (a) (1) (A), although the motion itself did not indicate its basis. In his brief, however, the defendant argues that the requested discovery is authorized by rule 14 (a) (1) (A) (iii) (mandatory discovery of "[a]ny facts of an exculpatory nature") and (vii) (mandatory discovery for "[m]aterial and relevant police reports . . . and statements of persons the Commonwealth intends to call as witnesses"). Moreover, he asserts in his brief that he is entitled to automatic, mandatory discovery of the requested information because "the Commonwealth and its agents, the State police, have exclusive control over the documents that contain those statistics." The Commonwealth, on the other hand, asserts that the defendant is not entitled to the requested discovery because the information sought is not "relevant or material" to his defense as required by rule 14 (a) (1) (A). Neither position is fully correct.

It is unconstitutional for an officer to stop a vehicle based on the race or ethnicity of the person, or persons, in it. In *Commonwealth* v. *Lora*, *ante* 425, 438-440 (2008), we concluded that the practice of racial profiling, to the extent that it exists in the Commonwealth, could be deterred by expanding the scope of the exclusionary rule to permit suppression of contraband seized in the course of a traffic stop made for discriminatory reasons. See also *id.* at 447, 449-450 (Ireland, J., concurring). We also set forth in the *Lora* decision standards for determining whether a defendant has met his or her burden, for purposes of a motion to suppress, of demonstrating that racial profiling was the basis for the stop. See *id.* at 440-442.[5] Our opinion makes

---

[4]The G. L. c. 211, § 3, petition was properly considered by the single justice. The Commonwealth had no other available form of relief, see *Commonwealth* v. *Bing Sial Liang*, 434 Mass. 131, 133 (2001), and is not required "to disobey a judicial order before an appeal can be taken." *Id.* See *District Attorney for the Norfolk Dist.* v. *Flatley*, 419 Mass. 507, 509 n.3 (1995).

[5]We concluded that the defendant had not met his burden. See *Commonwealth* v. *Lora*, *ante* 425, 443 (2008). Accordingly, we determined that the order of

clear that evidence supporting a determination that a defendant was stopped for discriminatory motives would be "material and relevant" to rebut the presumption that a law enforcement officer making a traffic stop has acted in good faith and with non-discriminatory motives, and might warrant suppression of the evidence seized during the traffic stop. See *id.* at 442. The sole question before this court, however, is not whether the information sought may turn out to be "material and relevant" to the defense, or even "potentially exculpatory" under the operational matrix set forth in the *Lora* decision, but whether the information is subject to a order to furnish automatic and mandatory discovery under rule 14 (a) (1) (A). We conclude that it is not.

Rule 14 (a) (1) (A) obligates the Commonwealth to furnish facts and information "relevant to the case and . . . in the possession, custody or control of the prosecutor, persons under the prosecutor's direction and control, or persons who have participated in investigating or evaluating the case and either regularly report to the prosecutor's office or have done so in the case." A categorical, and unsupported, request for all of an arresting officer's police reports, even for a reasonable period of time (here, seven months), cannot be sufficient by itself, in this area of the law, to justify an automatic production order under rule 14 (a) (1) (A). Were it otherwise, an arresting officer's motor vehicle citations, or traffic stop reports, would routinely be demanded in every case involving the traffic stop of a minority driver. We decline to approve the use of the discovery rules to impose such an onerous burden on the Commonwealth, in the absence of a preliminary showing by the defendant that a reasonable basis exists to require the information sought. See *Commonwealth* v. *Thomas, ante* 451, 453-455 (2008).

The defendant's motion was accompanied by copies of two State police reports of arrests arising from traffic stops conducted by Trooper Maher on Route 84 in Sturbridge during the period between January 1, 2006, and July 31, 2006. The arrestee in one arrest report was a male whose place of birth was stated in the report as Cuba; the race of the arrestee in the other report was stated in the report as "black." This is not enough. The

the judge in the Superior Court suppressing the Commonwealth's evidence was erroneous and must be reversed. See *id.* at 447.

preliminary showing required of a defendant seeking this type of discovery must contain reliable information in affidavit form demonstrating a reasonable basis to infer that profiling, and not a traffic violation alone, may have been the basis for the vehicle stop. It is not sufficient, as is the case here, to aver speculation that profiling may be occurring on the part of the arresting officer or his department.

Even though the reports requested were within the possession, custody, and control of Trooper Maher (as the arresting officer and an anticipated prosecution witness), the motion seeking such material should not have been allowed in the absence of supporting information indicating that Trooper Maher, at the time he stopped the defendant's vehicle, may have been engaging in selective enforcement of the traffic laws.[6] Because the order of the Superior Court was in error, the single justice exceeded her authority in denying the Commonwealth's petition to vacate the order.

3. The judgment in the county court denying the Commonwealth's G. L. c. 211, § 3, petition is vacated. A new judgment is to enter allowing the Commonwealth's petition, vacating the order in the Superior Court compelling the requested discovery, and denying the defendant's motion.

*So ordered.*

---

[6]We recognize that Mass. R. Crim. P. 14 (a) (2), as appearing in 442 Mass. 1518 (2004), authorizes, as a discretionary matter, pretrial discovery for other "material and relevant evidence not required by subdivision (a) (1)," so long as the motion is filed within the time allowed under Mass. R. Crim. P. 13 (d) (1), as appearing in 442 Mass. 1516 (2004). We further recognize that all pretrial motions, under Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004), must be accompanied by "an affidavit detailing all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion." As has been stated above, however, the defendant's motion was not filed under rule 14 (a) (2), nor was it accompanied by an affidavit (or affidavits) containing relevant statistical data, information obtained from the registry of motor vehicles, or factual allegations concerning the stop of the defendant's vehicle (to mention some possible sources of evidentiary showings, without the exclusion of others). Such an affidavit (or affidavits) may have allowed the defendant to meet that rule's threshold requirement of establishing the relevance of the information sought. In the absence of such an accompanying affidavit, however, the judge should not have allowed the motion.