Commonwealth *v.* Bernardo B., a juvenile.

COMMONWEALTH *vs.* BERNARDO B., a juvenile.

Suffolk. November 3, 2008. - February 6, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, & CORDY, JJ.

*Practice, Criminal,* Discovery, Presumptions and burden of proof, District Attorney. *Supreme Judicial Court,* Superintendence of inferior courts, Appeal from order of single justice. *Selective Prosecution. Due Process of Law,* Selective prosecution. *Constitutional Law,* Equal protection of laws. *Evidence,* Selective prosecution, Relevancy and materiality, Statistics. *Rape.*

Discussion of the limits on the Commonwealth's discretion in determining whether to prosecute an individual, the burden of proof placed on an individual raising a claim of selective prosecution, and the burden (specifically, a threshold showing of relevance) placed on such an individual when seeking statistical evidence from the Commonwealth to support such a claim. [167-170]

Discussion of the origins and history of, and the modern amendments to, the statutory rape law, G. L. c. 265, § 23. [169-172]

A single justice of this court did not abuse her discretion in denying the Commonwealth's motion to vacate a Juvenile Court judge's pretrial discovery order, issued pursuant to Mass. R. Crim. P. 14 (a) (2), at the request of the juvenile, a boy charged with nine counts of sexual offenses, including statutory rape, G. L. c. 264, § 23, where the juvenile had sufficiently met the threshold showing based on credible evidence that he was entitled to discovery for the purpose of investigating and, if warranted, raising a claim of selective prosecution, as the record suggested that while the sexual activity in question was nonforcible, that all of the children involved mutually agreed to it, and that all were under the age of consent, the juvenile — the only male among the children involved — was the only child charged with any offense as a result of the alleged activity [172-173]; where the statistical information the juvenile sought to obtain from the Commonwealth was relevant and material to the selective prosecution claim [173-175]; and where the Commonwealth failed to demonstrate that production of the information would be burdensome or require the disclosure of private or confidential information [175]. SPINA, J., dissenting, with whom COWIN, J., joined.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 1, 2008.

The case was heard by *Botsford,* J.

*Michael Sheehan,* Assistant District Attorney, for the Commonwealth.

*Janice Bassil (Michael J. Traft* with her) for the juvenile.

*Corinne Schiff, Mie Lewis, & Lenora M. Lapidus,* of New York, *& Sarah Wunsch* for American Civil Liberties Union Foundation of Massachusetts & others, amici curiae, submitted a brief.

MARSHALL, C.J. On September 30, 2008, the Commonwealth appealed from an order and judgment of a single justice denying its petition pursuant to G. L. c. 211, § 3,[1] to vacate a Juvenile Court judge's pretrial discovery order. The order issued pursuant to Mass. R. Crim. P. 14 (a) (2),[2] as appearing in 442 Mass. 1518 (2004), at the request of the juvenile male (boy), charged with nine counts of sexual offenses, including rape of a child, G. L. c. 265, § 23 (statutory rape),[3] which the boy allegedly perpetrated against three female children, who were his friends. At the time of the alleged offenses, between August 10 and October 15 of 2007, the boy was fourteen years old and entering the ninth grade, two of the girls were twelve years old and entering the seventh grade, and the third girl, who was born on October 15, 1995, was turning twelve years old and entering

[1]General Laws c. 211, § 3, provides, in part: "The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided . . . . In addition to the foregoing, the justices of the supreme judicial court shall also have general superintendence of the administration of all courts of inferior jurisdiction, including, without limitation, the prompt hearing and disposition of matters pending therein."

[2]Rule 14 of the Massachusetts Rules of Criminal Procedure, 442 Mass. 1518 (2004), provides: "The defendant may move, and following its filing of the Certificate of Compliance the Commonwealth may move, for discovery of other material and relevant evidence not required [by provisions for automatic discovery]. . . ."

[3]General Laws c. 265, § 23, as amended through St. 1998, c. 194, § 238, states, in part: "Whoever unlawfully has sexual intercourse or unnatural sexual intercourse, and abuses a child under sixteen years of age shall, for the first offense, be punished by imprisonment in the state prison for life or for any term of years, or, except as otherwise provided, for any term in a jail or house of correction, and for the second or subsequent offense by imprisonment in the state prison for life or for any term of years, but not less than five years; provided, however, that a prosecution commenced under the provisions of this section shall not be placed on file or continued without a finding." The Legislature rewrote the statute in 2008. See G. L. c. 265, § 23, as appearing in St. 2008, c. 205, § 2 (effective Oct. 22, 2008).

sixth grade.[4] After his counsel unsuccessfully attempted to have the three girls charged with raping him in connection with the same alleged incidents, the boy sought discovery from the Commonwealth pursuant to rule 14 (a) (2), in order to investigate and, if possible, support his claim that he was being selectively prosecuted because of his gender. Cf. *Commonwealth* v. *King*, 374 Mass. 5, 19 (1977) ("a female charged with prostitution or night walking would be entitled to a dismissal of the charges with prejudice on an appropriate showing that the police department or the prosecutor's office followed an unjustifiable policy of selective enforcement against female prostitutes and not male prostitutes"). The Juvenile Court judge granted the boy's discovery request and denied the Commonwealth's two subsequent motions for reconsideration. The single justice upheld the judge's order. In essence, the Commonwealth contended that the boy failed to present any evidence that would upset the "presumption of regularity" that attends its decision to initiate proceedings against him, that the material he seeks is neither relevant nor material to the charges against him of statutory rape and that production of the information he seeks would be onerous and implicate the privacy of others.

On December 19, 2008, we issued the following order:

> "After full consideration of the appellate record, the parties' briefs, and the oral arguments, it is hereby ordered that the judgment of the single justice dated September 10, 2008, denying the Commonwealth's petition pursuant to G. L. c. 211, § 3, is affirmed. Opinion or opinions to follow.

> "The stay pending appeal ordered by the single justice on September 30, 2008, is hereby vacated. The Commonwealth shall respond to the juvenile's discovery request forthwith (except paragraphs 4 and 5 of the request, which the juvenile has since waived). The case shall proceed in the Juvenile Court on an expedited basis, with the judge ensuring that no nonemergency delays be tolerated.

> "The rescript shall issue to the county court forthwith."

This opinion states the reason for that order.

---

[4]As a result of the arrest and charges, the boy has been suspended from school and removed from its football team. He is being tutored at home.

The Commonwealth has broad discretion in deciding whether to prosecute a case; judicial review of these decisions must proceed circumspectly lest we intrude on a function constitutionally vouchsafed to another branch of government. See, e.g., *Commonwealth* v. *Lora*, 451 Mass. 425, 445 (2008) (standard of proof for selective enforcement claim "must be sufficiently rigorous that its imposition does not unnecessarily intrude on the exercise of powers constitutionally delegated to other branches of government"). However, prosecutorial discretion may not transgress the limits set out in our Federal and Massachusetts Constitutions; in the final analysis, it is the judicial branch's solemn duty to ensure that such overreaching does not occur. *Id.* at 437, quoting *Commonwealth* v. *King, supra* at 20 (" 'conscious exercise of some selectivity' in criminal law enforcement" permitted as long as selectivity not based on "an unjustifiable standard such as race, religion or other arbitrary classification").

The record in this case, as we elaborate below, suggests among other things that the sexual activity in question was nonforcible, that all of the children mutually agreed to it, and that all were under the age of consent. In the circumstances, we conclude that the boy has sufficiently met the threshold showing required under rule 14 (a) (2) that the discovery he seeks is relevant to his claim of selective prosecution, and that the Commonwealth has failed to advance any persuasive reason that it cannot, or should not, be required to meet its obligation of production.[5]

1. *Facts.* In early October, 2007, the boy's father checked the "text messages" on his son's cellular telephone[6] and discovered a text message from his son's friend, R.L., a girl, that stated: "I would have given you an HJ[7] if [S.C.] wasn't there." The boy's father contacted S.C.'s mother to express his concerns. After questioning her daughter about her interactions with the boy and speaking with other parents, S.C.'s mother notified the police

---

[5]We acknowledge the amicus brief filed by the American Civil Liberties Union of Massachusetts; the American Civil Liberties Union — Women's Rights Project; and the American Civil Liberties Union — Reproductive Freedom Project in support of the boy.

[6]A condition of the son's having a cellular telephone was that his father would be permitted to check any text messages.

[7]"Hand job," i.e., manual sex.

on October 13, 2007, that the boy had sexually assaulted S.C., R.L., and a third girl, A.L.[8]

That same day, a police officer met jointly with the mothers of the three girls at S.C.'s mother's house and took statements from the mothers about what they had learned from their daughters concerning sexual contact with the boy. The girls were then questioned separately at a child advocacy center by a sexual assault intervention network (SAIN) interviewer employed by the district attorney, while the police officer, an assistant district attorney, and a victim witness advocate watched from a closed circuit television in a separate room. Each interview was recorded.[9] Because the girls' interviews are the foundation of this case, we summarize them at some length.[10]

a. *Interview with A.L.* A.L. described two incidents of sexual contact with the boy, whom she described as a friend. Both occurred in August or September, 2007, during "manhunt," a hide-and-seek game that the children played in the woods behind S.C.'s home. She reported that, on one occasion, in response to the boy's request,[11] she gave the boy a "hand job" by reaching into his pants and touching his penis for about "two seconds." The two then continued to play manhunt. During the second incident, she and the boy were kissing in the woods behind S.C.'s house when he began "pressuring me a little" for a "blow job" (fellatio). A.L. stated that she put her mouth on the boy's penis twice, each time for about "one second." Following these incidents, A.L. reported, she and the boy remained friends. At one point he told her that "he felt really bad for it [and] that he would never do that again to anyone."

---

[8] A.L. and R.L. are not related.

[9] Both the judge and the single justice viewed the respective videotapes of the SAIN interviews and also reviewed transcripts of the interviews, as have we.

[10] The police officer's interview with the mothers of the girls does not materially differ from the statements made by the girls themselves at their respective SAIN interviews.

[11] A.L. stated that, on the first occasion, the boy "was pressuring me to give him a hand job," but that "he didn't force me. . . . he honestly didn't. He just like, pressured." When asked what she meant by "pressured," A.L. responded, "He was just like, 'Oh, come on. Just do it.' Then he's like, 'Oh, just this once. Just do it. It will be fine.' " In response to questioning by the SAIN interviewer, A.L. denied that she felt "uncomfortable" with the boy.

b. *Interview with R.L.* R.L. reported that she performed oral or manual sex on the boy about four times in late summer or early fall of 2007. Three of these incidents occurred during the game of manhunt, when the boy "forc[ed]" her to have sexual contact with him by laying down, pulling off his pants, and telling her, "Just start doing it. I know you're gonna like it. Just, c'mon. Just please?" He also told R.L. that, if she did not perform the sex acts on him, he would tell a friend of R.L.'s that R.L. had said bad things about her. The other incident occurred in the basement of S.C.'s home, apparently during a game of "truth or dare." R.L. also told the interviewer that, on another occasion in S.C.'s basement, the boy showed her and S.C. a pornographic "video clip," using S.C.'s brother's computer, of a woman performing fellatio on a man.[12]

c. *Interview with S.C.* S.C. reported a number of sexual contacts with the boy during the late summer and early fall of 2007. Most of these incidents occurred in S.C.'s basement during games of "truth or dare," in which the boy told S.C. that if she wanted to "make out" with him, she had to give him a "hand job" because "[t]hose are my rules."[13] She estimated that she performed manual sex on the boy approximately five times.[14]

S.C. also reported one occasion in which the boy put his penis in her mouth.[15] She told him that she did not want him to do this, and the boy replied, "Whatever." During another game of truth or dare, S.C. reported, the boy "dare[d]" S.C. and A.L. to grab his penis, and they both did and then kissed him. S.C. also stated that the boy showed her and R.L. a video clip on her

---

[12]R.L. reported other incidents of the boy's sexual activity as well, including his drawing on her legs up to her knees, daring her to drink a cup of water that he later claimed to contain ejaculate, and giving S.C. a towel to dry herself that he claimed to have ejaculated in.

[13]R.L. was in the basement during these incidents, aware of, but apparently not watching, the sexual conduct between S.C. and the boy.

[14]S.C. reported one incident in which she felt "pressured" to perform manual sex on the boy. When the interviewer asked her to elaborate on what she meant, S.C. responded, "Like, he was like, 'Oh, like, just do it.' I don't know."

[15]Describing the same incident subsequently, S.C. stated, "I just put [his penis] in my mouth." In an amendment to her statement, S.C. recalled another incident in which the boy put his penis in her mouth "for a short period of time."

brother's computer of a woman performing fellatio on a man. In response to a question from the SAIN interviewer, S.C. denied that the boy did or showed her anything else that made her uncomfortable.[16]

2. *Procedural background.* On October 18, 2007, the boy was arrested and charged as a juvenile on nine counts of criminal conduct: three counts of statutory rape (R.L., A.L., and S.C.); three counts of indecent assault and battery of a child under the age of fourteen years (R.L., A.L., and S.C.), G. L. c. 265, § 13B[17]; two counts of dissemination of obscene matter, G. L. c. 272, § 29[18]; and one count of assault and battery (R.L.), G. L. c. 265, § 13A.[19] On two occasions thereafter, the boy's counsel communicated with the district attorney's office in an effort to have the Commonwealth charge R.L., A.L., and S.C. with statutory rape, indecent assault and battery, and assault and battery against the boy. She also requested documentation of

---

[16]Subsequently, S.C. recalled an incident at a party at the house of S.C.'s grandmother in which the boy and S.C.'s brother were drawing on her and R.L.'s legs with a marker, the girls would hike up their pants, the boys would draw higher, and the boy said he wanted to go higher *still.* She also recalled the incident noted above in which, after taking a shower because she had gotten dirty while playing, the boy gave her a towel that he then claimed had ejaculate on it, and the incident in which he persuaded R.L. to drink what he said contained ejaculate. See note 12, *supra.*

[17]General Laws c. 265, § 13B, provides in relevant part: "Whoever commits an indecent assault and battery on a child under the age of fourteen shall be punished by imprisonment in the state prison for not more than ten years, or by imprisonment in a jail or house of correction for not more than two and one-half years; and whoever commits a second or subsequent such offense shall be punished by imprisonment in the state prison for life or any term of years; provided, however, that a prosecution commenced under the provisions of this section shall not be placed on file or continued without a finding."

[18]General Laws c. 272, § 29, provides in relevant part: "Whoever disseminates any matter which is obscene, knowing it to be obscene, or whoever has in his possession any matter which is obscene, knowing it to be obscene, with the intent to disseminate the same, shall be punished by imprisonment in the state prison for not more than five years or in a jail or house of correction for not more than two and one-half years or by a fine of not less than one thousand nor more than ten thousand dollars for the first offense, not less than five thousand nor more than twenty thousand dollars for the second offense . . . ."

[19]General Laws c. 265, § 13A, provides in pertinent part: "Whoever commits an assault or an assault and battery upon another shall be punished by imprisonment for not more than 2 1/2 years in a house of correction or by a fine of not more than $1,000."

any written policy promulgated by the district attorney to assist in deciding whether to prosecute cases concerning sexual activity among children under the age of sixteen. The district attorney informed her that his office was in the process of reviewing its policy concerning consensual sexual conduct between underage minors. In May, 2008, however, apparently without having such a policy, the district attorney informed the boy's counsel that he would proceed with the case against the boy. The boy subsequently sought complaints against the girls through the clerk-magistrate, who denied the requests. A Juvenile Court judge upheld the clerk-magistrate's decision.

In May, 2008, the boy sought discovery from the Commonwealth pursuant to rule 14 (a) (2) in order to investigate and, if appropriate, bring a claim that the boy had been selectively prosecuted.[20] The boy supported his request with copies of the police

[20]The discovery request, in full, was for:

"1. The number of cases charged in the last five years in Plymouth County of statutory rape and/or indecent assault and battery where the accused and the complaining witness were under 16 years old, including the ages and sex of each.

"2. The number of cases charged in the last five years in Plymouth County of statutory rape and/or indecent assault and battery where the accused and the complaining witness were under 16 years old, and the female was charged.

"3. The number of cases reported to the Plymouth County District Attorney in the last five years of sexual assault of a person under 16 years of age (in adult or juvenile court or charged as a youthful offender) where the defendant was under 16 years of age, including the ages and sexes of the accused and the complaining witness. This includes cases not formally charged.

"4. The number of cases charged in the last five years in Plymouth County of statutory rape and/or indecent assault and battery where the accused was an adult female and the ages and sex of the accused and the complaining witness.

"5. The number of cases reported to the Plymouth County District Attorney in the last five years of statutory rape and/or indecent assault and battery where the accused was an adult female and the ages and sex of the accused and the complaining witness. This includes cases not formally charged.

"6. Any and all written policies by the Plymouth County District Attorney in the last five years concerning the charging of statutory rape

report and of the videotaped interviews. The Commonwealth opposed the motion.

On May 20, 2008, the judge allowed the discovery motion on the ground that the materials sought "seem to be the only source available to the juvenile to establish his claim" of selective prosecution. The Commonwealth then moved for reconsideration, contending that three decisions that had issued the same day as the judge's discovery order, *Commonwealth* v. *Lora*, 451 Mass. 425, 445 (2008); *Commonwealth* v. *Thomas*, 451 Mass. 451 (2008); and *Commonwealth* v. *Betances*, 451 Mass. 457 (2008), required that the order be vacated. On June 19, 2008, the judge denied the reconsideration motion, reasoning that the record indicated that the sexual activity was mutual, and that the boy had established "a credible claim that the primary distinction between the charged and uncharged participants in [the] consensual [sexual] conduct is gender."[21]

The Commonwealth then filed a second motion for reconsideration, alleging that certain material facts had not "explicitly" been brought to the judge's attention in the prior proceedings.[22] On July 9, 2008, the judge denied the Commonwealth's request. On August 1, 2008, the district attorney petitioned a single justice of this court for relief pursuant to G. L. c. 211, § 3. The single justice denied the petition and invited the judge to give further consideration to requests number 4 and 5, which she found "attenuated, at best." She also ruled that the Commonwealth had not provided sufficient information to enable her to assess its assertion that responding to request number three would be overly burdensome. The boy subsequently waived discovery requests number 4 and 5. The Commonwealth then appealed from the single justice's order as to the boy's discovery requests number 1, 2, 3, and 6.

---

when the accused and the complaining witness are both under 16 years old."

[21]In opposition to the motion to reconsider, the boy's counsel submitted an affidavit detailing her efforts to have the Commonwealth charge the complaining witnesses with sexual misconduct against the boy.

[22]On June 13, 2008, while the second motion for reconsideration was pending, the boy's counsel moved to dismiss the statutory rape claim on the ground that the law was unconstitutional as applied to him. The motion, which remains undecided, is not before us.

3. *Discussion.* a. *Standard of review.* Our standard of review is well established. "We will not reverse an order of a single justice in a proceeding brought pursuant to G. L. c. 211, § 3, absent an abuse of discretion or other clear error of law. Thus, we review independently the single justice's legal rulings to determine whether it is erroneous." *Youngworth* v. *Commonwealth,* 436 Mass. 608, 611 (2002), citing *Boston Herald, Inc.* v. *Sharpe,* 432 Mass. 593, 602-603 (2000). In reviewing the single justice's order, we are mindful that relief under G. L. c. 211, § 3, "is not a means for second guessing a trial judge's evidentiary rulings. Whether evidence is legally relevant is a decision generally left to the trial judge." *Commonwealth* v. *Yelle,* 390 Mass. 678, 687 (1984).

b. *Selective prosecution.* (i) *Burden of proof.* The Commonwealth asserts that the boy is not entitled to the discovery he seeks because he has failed to "raise a reasonable inference, based on credible evidence that he is being selectively prosecuted in his own case." Our analysis begins with the premise that the district attorney has "wide discretion in determining whether to prosecute an individual." *Commonwealth* v. *Clint C.,* 430 Mass. 219, 228 (1999). Prosecutorial decisions enjoy a presumption of good faith. See *Commonwealth* v. *Franklin,* 376 Mass. 885, 894 (1978). The presumption of prosecutorial regularity is broad enough to encompass some selectivity in prosecutorial targets. *Id.* See *Commonwealth* v. *Lora, supra* at 437 ("An arrest or prosecution based on probable cause is ordinarily cloaked with a presumption of regularity"). Deference to prosecutorial decision-making is borne of the recognition that decisions whether and how to prosecute entail policy considerations, such as deterrence value and prosecuting priorities, that are ill suited to judicial review. See *Wayte* v. *United States,* 470 U.S. 598, 607-608 (1985) (discussing "substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute").

Prosecutorial discretion, however, is not unbounded. See *id.* at 608. The Federal and Massachusetts Constitutions guarantee individuals that the government will not proceed against them in a manner that is arbitrary or based on "an unjustifiable standard," such as membership in a protected class. *Commonwealth* v. *King,* 374 Mass. 5, 20 (1977), quoting *Oyler* v. *Boles,* 368 U.S. 448,

456 (1962). See, e.g., *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 229-230 (1983), and cases cited ("The Equal Protection principles of the Fourteenth Amendment to the United States Constitution and arts. 1 and 10 of the Massachusetts Declaration of Rights prohibit discriminatory enforcement of impartial laws"). Notwithstanding the presumption of regularity that attaches to prosecutorial decisions, judicial scrutiny is necessary to protect individuals from prosecution based on arbitrary or otherwise impermissible classification.

Because a claim of selective prosecution is a collateral attack on prosecutorial decision-making, a degree of rigor is demanded to balance such claims against the presumption of prosecutorial regularity. *Commonwealth* v. *Lora, supra* at 445 (standard for proving selective prosecution "must be sufficiently rigorous that its imposition does not unnecessarily intrude on the exercise of powers constitutionally delegated to other branches of government. Balance is therefore important"). To bring a claim of selective prosecution successfully, the defendant bears the initial burden to " 'present evidence which raises at least a reasonable inference of impermissible discrimination,' including evidence that 'a broader class of persons than those prosecuted violated the law, . . . that failure to prosecute was either consistent or deliberate, . . . and that the decision not to prosecute was based on an impermissible classification such as race, religion, or sex.' " *Id.* at 437, quoting *Commonwealth* v. *Franklin, supra* at 894. Once a defendant has made this prima facie showing, "the Commonwealth must rebut that inference or suffer dismissal of the underlying complaint." *Commonwealth* v. *Lora, supra* at 438, quoting *Commonwealth* v. *Franklin, supra* at 895.

Defendants raising a claim of selective prosecution may do so by introducing statistical evidence or other data demonstrating that similarly situated suspects or defendants are treated differently by the prosecutor on the basis of impermissible categorizations. See *Commonwealth* v. *Lora, supra* at 440, quoting *State* v. *Soto*, 324 N.J. Super. 66, 83 (1996) ("Statistics may be used to make out a case of targeting minorities for prosecution of traffic offenses . . ."). See also *Commonwealth* v. *Lafaso*, 49 Mass. App. Ct. 179, 184 (2000) (data regarding police department's arrests for prostitution and common night walking support reason-

Commonwealth *v.* Bernardo B., a juvenile.

able inference of selective prosecution on basis of gender). Not surprisingly, defendants looking to make such statistical showings of arrests and prosecutions may look to the prosecutor's office as the most comprehensive, reliable source of raw information from which to develop their analyses.

The Commonwealth maintains that such discovery requests must be denied pursuant to rule 14 (a) (2) if the request fails to raise a "reasonable inference, based on credible evidence," that the defendant himself was selectively prosecuted, a burden the Commonwealth asserts that the boy has failed to carry in this case. We agree with the single justice that the Commonwealth's version of a defendant's burden under rule 14 (a) (2) "put[s] the cart before the horse." The "reasonable inference" standard asks whether the defendant, seeking dismissal of the charges against him, has made a prima facie case of selective prosecution. What the boy seeks here is discovery, not dismissal. At the discovery stage, the question is whether the defendant has made a "threshold showing of relevance" under rule 14 (a) (2). See *Commonwealth* v. *Betances*, 451 Mass. 457, 462 n.6 (2008) (noting rule's "threshold requirement of establishing the relevance of the information sought"); *Commonwealth* v. *Oliveira*, 438 Mass. 325, 339 (2002) (defendant does not have unlimited right to summons witnesses and documents in advance of trial, but may only do so after making threshold showing of relevance pursuant to rule 14 [a] [2]). To adopt the higher burden suggested by the Commonwealth would place criminal defendants in the untenable position of having to produce evidence of selective enforcement in order to obtain evidence of selective enforcement.

We now turn to the question whether the boy had made a threshold showing that the material he seeks is relevant to the claim of selective enforcement, a point the Commonwealth also disputes.

(ii) *The threshold showing.* The boy sought material from the Commonwealth concerning the district attorney's policies and decisions to prosecute in cases alleging statutory rape where both a defendant and any complainants were minors, on the grounds that the information was relevant to his claim that the disparity in treatment between him and the complainant girl children was

based on gender discrimination.[23] The judge agreed, and in his order on the Commonwealth's first motion for reconsideration elaborated on the evidence supporting the boy's request, to wit: both the boy and the three complaining witnesses appeared to have engaged in "mutually consensual acts of oral sex," the district attorney did not dispute that the activity was consensual, all four children were under the age of consent, and the district attorney refused the request of the boy's counsel that the girls be charged with statutory rape of the boy. The Commonwealth argues that the judge impermissibly substituted his own characterization of the allegations for those of the Commonwealth. Further, it asserts that the charges are supported by the objective evidence, namely, the age and grade differences between the boy and the girls and the nature of the alleged sexual offenses. Because the central issues in this case all arise in the context of the statutory rape charge, we briefly examine the statutory rape law before proceeding to the evidence of record.

Statutory rape is an offense of ancient origins. "First codified into English law in 1275, statutory rape criminalized sexual relations with females under the age of twelve." Oberman, Regulating Consensual Sex with Minors: Defining a Role for Statutory Rape, 48 Buff. L. Rev. 703, 754 (2000). The aim of this gender-specific statute was not the protection of young females but the protection of fathers' property interests in their young daughters, whose loss of virginity would severely depress the value of the dowry the father would receive on his daughter's marriage. *Id.* at 754-755. By the late Sixteenth Century, the aim of the law evolved to a statute designed to protect men from charges of illegal sex with young girls. The age of consent was lowered to ten years

___

[23]The boy's initial motion was not accompanied by a supporting affidavit, but was accompanied by the videotapes or transcripts of the videotapes between each complainant and the prosecution office's interviewer. In opposition to the Commonwealth's first motion for reconsideration, the boy's counsel submitted her own affidavit, attaching transcripts of the complainants' videotaped interviews, a copy of the police report, and copies of letters she sent to the district attorney pressing him to charge the complainants with statutory rape as well and to provide copies of any written policies of his office concerning prosecuting cases of consensual sex among persons under the age of sixteen. The complainants' videotaped interviews are the only source of first-hand information about the alleged incidents leading to charges against the boy. We see no merit in the Commonwealth's assertion that the boy failed to present evidence in support of his rule 14 (a) (2) discovery request.

and so it stood when the American colonies, including Massachusetts, absorbed English common law and adopted the English law of statutory rape. General Laws of Massachusetts Colony at 15 (1672), reprinted in Colonial Laws of Massachusetts 1672-1686 (1887) ("whosoever he be shall commit or have Carnal Copulation with any such [woman] Childe under ten years old . . . he shall be put to death"); Province Laws 1692-1693, c. 19, § 11 (capital offense for any man to "unlawfully and carnally know and abuse any woman child under the age of ten years"). See generally Note, No Child Left Behind Bars: The Need to Combat Cruel and Unusual Punishment of State Statutory Rape Laws, 16 J.L. & Pol'y 717, 725-726 (2008). In the late Nineteenth Century, in response to the widespread sexual exploitation of young girls in factories and urban centers, temperance organizations and other reform groups launched a nationwide effort to raise the age of consent. In Massachusetts, between 1886 and 1898, the age of consent rose from ten to thirteen, then fourteen, then sixteen years of age. See *Commonwealth* v. *Hackett*, 170 Mass. 194, 195-196 (1898) (summarizing statutory amendments to age of consent). As in Elizabethan times, however, only females could be the victims of statutory rape.

There have been more recent efforts to reform our American statutory rape law. Statute 1974, c. 474, § 3, struck the word "female" from G. L. c. 265, § 23. Compare St. 1974, c. 474, § 3, with St. 1966, c. 291. See also note 3, *supra*. As we noted in *Commonwealth* v. *Hackett*, 383 Mass. 888, 888 (1981): "In general, the 1974 amendment eliminated prior language which defined the victims of rape as female or female children. Instead, the victims are now defined as persons or children and the generic masculine pronoun is substituted throughout. Both males and females are protected from sexual assault by this same statute, which is neutral as to the gender of the victim. Nor does the statute define the various crimes with reference to the gender of the offender. The result is that the penalties for sexual intercourse and unnatural sexual intercourse are the same without regard to the gender of the victim."

Modern amendments leave no doubt about the Legislature's intent to protect all children under sixteen years old from sexual abuse. The statutory rape law, as well, makes clear that perpetrators of statutory rape may be either male or female. Statutory

rape in Massachusetts is a strict liability felony. Only two elements are needed to support a conviction under G. L. c. 265, § 23: "(1) sexual intercourse or unnatural sexual intercourse with (2) a child under sixteen years of age." *Commonwealth* v. *Miller*, 385 Mass. 521, 522 (1982). See *id.* at 525 (noting that mistake as to age is not defense to statutory rape in Massachusetts). Force is not a necessary element of the crime. Moreover, conviction of statutory rape has weighty consequence beyond incarceration. Those convicted enter the Commonwealth's sex offender registry and are required to abide by all of the obligations and restrictions contained therein. See G. L. c. 6, §§ 178C-178Q.

We turn now to the record before us, which principally consists of the videotaped and transcribed interviews of A.L., R.L., and S.C.

Both the judge's and the single justice's review of the videotaped evidence indicate that the incidents alleged involved no force. The judge described the incidents as mutually assented-to, and the single justice agreed with slight modification, stating: "[A]lthough there is some mention of the juvenile putting some 'pressure' on one or more of the complainants in his comments to them . . . [t]here is no indication . . . of any complainant refusing or saying 'no' to the proposed conduct, and the juvenile ignoring such a signal; indeed, the opposite is true." The boy apologized to A.L. for his behavior, and told S.C. "whatever" when she said she did not want him to put his penis in her mouth. When A.L. told him she did not want to give him a "blow job," she reported, the boy responded, "OK, it's fine. Whatever you want to do is fine." None of the complainants reported being afraid of the boy's behavior. Indeed, sexual behavior seemed to melt seamlessly into games of "manhunt," "truth or dare," and "making out." Some of it occurred with more than one complainant present. The judge was not correct, as the Commonwealth points out, to describe all of the children as teenagers. But the fact is that the complainants were on the cusp of their teenage years and the boy had just entered his teens. All of the children were too young to consent legally to the sexual activity in which they engaged. It is no slight to prosecutorial discretion but a sober view of the record that reveals that the

facts fall far short of the Commonwealth's characterization of them.[24]

This is not to say we are untroubled by the boy's alleged behavior. But the question here is whether his behavior was so dissimilar from that of the girls in nature, kind, and degree as to nullify the possibility that his discovery request might yield information relevant to a claim of selective prosecution. The boy was the only child charged with statutory rape, or any offense, as a result of the incidents alleged, and he was the only male among the four children. The district attorney affirmatively declined to bring charges against the female children where the facts described by the girls could be viewed as contravening those same laws by them. See *Commonwealth* v. *Hackett*, 383 Mass. 888, 888 (1981) (under statutory rape law, "the penalties for sexual intercourse and unnatural sexual intercourse are the same without regard to the gender of the victim"). In these circumstances, the single justice did not abuse her discretion in declining to vacate the ruling of the motion judge that the boy has made a threshold showing based on credible evidence that he is entitled to discovery for the purpose of investigating and, if warranted, raising a claim of selective prosecution.

(iii) *Relevance and materiality.* The Commonwealth next contends that the information the boy seeks would not be "material and relevant" to a claim of gender-based selective prosecution. See Mass. R. Crim. P. 14 (a) (2). The district attorney reasons that, because "there exists a link between violation of sexual assault laws and gender [and] [p]erpetrators of sexual assaults are overwhelmingly male," the requested discovery "will say little or nothing about the selectivity of a decision to charge a male with rape versus a female." The short answer is that the district attorney's characterization of the requested information cannot speak to what the information will reveal when subjected to defense counsel's analysis.

We have recently enunciated standards governing the production of evidence concerning claims of selective prosecution. We held that "valid statistical evidence" demonstrating disparate

---

[24]The Commonwealth argues, for example, that the boy "pushed relentlessly for what he wanted," and that "[a]ll of the sex acts involved the juvenile obsessively seeking his own passion and pleasure . . . ."

treatment of a protected group "may be *relevant* and *material* to demonstrate" selective enforcement (emphasis added). *Commonwealth* v. *Thomas*, 451 Mass. 451, 455 (2008), citing *Commonwealth* v. *Lora*, 451 Mass. 425, 436-438 (2008). In *Commonwealth* v. *Betances*, 451 Mass. 457 (2008), we held that a defendant seeking to compile the appropriate statistical information to support a claim of selective prosecution may move under rule 14 (a) (2) for "material and relevant" pretrial discovery from the Commonwealth. *Id.* at 462 n.6. The request must be properly supported, and it may not impose undue burdens on the Commonwealth. See *Commonwealth* v. *Betances, supra* at 461 (discovery request must be reasonable as to time period); *Commonwealth* v. *Thomas, supra* at 454-455 (Commonwealth cannot be ordered to conduct statistical analysis of information not in its possession, custody or control or make legal evaluations of certain information in response to discovery request pursuant to Mass. R. Crim. P. 14 [a] [1] [A] [iii] propounded by defendant seeking to support claim on selective prosecution).

The boy's discovery request falls squarely within the boundaries of these cases. The request seeks material only in the Commonwealth's possession, custody, or control.[25] Having waived discovery requests numbers 4 and 5, see note 20, *supra*, it is narrowly tailored to obtain data concerning the gender of complainants and accuseds under the age of sixteen in cases in Plymouth County concerning charges identical to certain charges brought against the boy. The material sought would, if it yielded evidence suggestive of selective prosecution, enable the boy to generate valid statistics or other objective data of the kind that has been found sufficient in other cases to present a prima facie case of discriminatory arrest and charging. See, e.g., *Commonwealth* v. *Lafaso*, 49 Mass. App. Ct. 179 (2000) (statistical evidence over four-month period showing police department prosecuted female prostitutes and night walkers but not male clients sufficient to meet defendant's initial burden on selective prosecution claim); *Commonwealth* v. *An Unnamed Defendant*, 22 Mass. App. Ct.

---

[25]The Commonwealth claims that "[s]ome of the material sought *may* well be available in the juvenile court's files, not just in the prosecution's files" (emphasis added). That does not excuse the Commonwealth's obligation pursuant to rule 14 (a) (2) to respond to a proper discovery request for the materials in its possession, custody, or control.

230, 231-232 n.3 (1986) (statistical evidence showing police arrested thirty-six female prostitutes but only one male prostitute compelled in one-year period sufficient to meet defendant's initial burden on selective prosecution claim). See also *Commonwealth v. Franklin*, 376 Mass. 885, 896-897 (1978) (two-year period of discovery request coincident with duration of racial conflict in public housing development not unreasonable; courts "traditionally" have not imposed narrow time restrictions on discovery requests in support of claims of selective prosecution). Contrast *United States v. Bass*, 536 U.S. 862, 863-864 (2002) (per curiam) ("raw statistics" of over-all charges on nationwide scale irrelevant to demonstrate decision makers' selective prosecution of black over white defendants in death penalty cases). In addition, request number 6, asking for written policies regarding prosecution of statutory rape charges where both the accused and the complainant are under sixteen years old, goes to the heart of the boy's potential selective prosecution claim. Finally, as the motion judge noted, the district attorney's office appears to be the only source of the materials sought. The Commonwealth's claim that the discovery sought is irrelevant and immaterial to the boy's investigation and possible prosecution of a selective enforcement claim is rejected.

(iv) *Burdensomeness and privacy.* We agree with the single justice that the Commonwealth has not sufficiently demonstrated that production of the requested information would be overly burdensome. To the contrary, as the single justice noted, the representations of the district attorney suggest that it is a relatively uncomplicated matter for the Commonwealth to produce documents in response, at least, to requests 1, 2, and 6, and there is insufficient evidence that production of materials in response to request number 3 would be burdensome. We do not read the discovery requests as either seeking or requiring the disclosure of private or confidential information.

4. *Conclusion.* For the foregoing reasons, on December 19, 2008, we ordered that the judgment of the single justice dated September 10, 2008, denying the Commonwealth's petition pursuant to G. L. c. 211, § 3, be affirmed. We further vacated the stay pending appeal ordered by the single justice on September 30, 2008. We ordered the Commonwealth to respond to the

juvenile's discovery request forthwith (except requests 4 and 5, which the boy had since waived). We ordered that the case proceed in the Juvenile Court on an expedited basis, with the judge ensuring that no nonemergency delays be tolerated.

SPINA, J. (dissenting, with whom Cowin, J., joins). In my view the juvenile has failed to make a sufficient showing to justify an order for discretionary discovery under Mass. R. Crim. P. 14 (a) (2), as appearing in 422 Mass. 1518 (2004). In particular, he has not shown the existence of evidence likely to be produced that will be both relevant and material to his claim of selective prosecution. See *Commonwealth* v. *Betances*, 451 Mass. 457, 462 n.6 (2008). He has supported his motion for discovery with nothing more than the details of his own case. He has done none of the groundwork that should have been done to raise even a hint of selective prosecution, but instead requested, successfully, that the Commonwealth expend its time and resources to do what he should have done. In truth, the Commonwealth must now produce more than what the juvenile would have had to produce to succeed on his discovery motion.

The decision to prosecute, or not prosecute, and what charges to bring, generally falls within the broad discretion of the prosecutor. *Commonwealth* v. *King*, 374 Mass. 5, 22 (1977). "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Wayte* v. *United States*, 470 U.S. 598, 607 (1985). Moreover, decisions not to charge, to offer a plea bargain, or to enter into a cooperation agreement, *Commonwealth* v. *Ciampa*, 406 Mass. 257 (1989), often are made to secure the testimony of one perpetrator in order to prosecute the more culpable party. These are executive, not judicial, decisions. "Judicial supervision in this area . . . entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by

subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Wayte* v. *United States, supra.*

Needless to say, prosecutorial discretion is not boundless but is subject to constitutional restraints. This includes principles of equal protection that prohibit the discriminatory application of impartial laws. *Commonwealth* v. *Franklin*, 376 Mass. 885, 894 (1978). To be successful with such a claim (selective prosecution), a defendant must show "that a broader class of persons than those prosecuted has violated the law, . . . that failure to prosecute was either consistent or deliberate, . . . and that the decision not to prosecute was based on impermissible classification such as race, religion, or sex" (citations omitted). *Id.* "[O]nce a defendant has raised a reasonable inference of selective prosecution, the Commonwealth must rebut that inference or suffer dismissal of the underlying complaint." *Id.* at 895.

Although this case is only at the discovery stage, the juvenile has not come forward with any evidence of selective prosecution. First, the circumstances of his case, which is his entire support for the claim of selective prosecution, is not enough to show the two groups are similarly situated. The two-year difference in their ages and the differences in their school grades are not inconsequential. They are precisely the same differences used by the local school department to segregate children: age and grade. The local school system segregates children according to three familiar categories: elementary (kindergarten-5), middle school (6-8), and high school (9-12), corresponding roughly to stages in a child's development. Second, he has not shown the Commonwealth consistently has prosecuted only male juveniles in these cases, nor has he shown intentional or deliberate discrimination by the prosecutor. Third, he has not shown the decision to prosecute was based on an impermissible classification. The gender difference here is purely incidental. The age difference and grade difference were the basis for the decision.

Where the district attorney did nothing more than base his decision to prosecute the juvenile but not the three females on the two-year age difference between eleven year old and twelve year olds in middle school on the one hand, and a fourteen year

old high school student, who also was on the football team, on the other hand, the juvenile has failed to support his claim of selective prosecution. He also has failed to show that the prosecutor's files will likely contain relevant information that will support a claim of selective prosecution. I respectfully dissent.