## COMMONWEALTH vs. JOSEPH NELSON.

Middlesex. May 5, 2011. - September 15, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Practice, Criminal,* Motion to suppress, Harmless error, Confrontation of wit-
nesses, Discovery. *Search and Seizure,* Warrant, Probable cause. *Constitu-
tional Law,* Search and seizure, Harmless error, Confrontation of witnesses.
*Probable Cause. Controlled Substances. Error, Harmless. Evidence,* Certifi-
cate of drug analysis, Expert opinion, Relevancy and materiality.

The denial by a Superior Court judge (motion judge) of a criminal defendant's
motion to suppress drugs and drug paraphernalia discovered during a
search conducted pursuant to a search warrant that was issued by a judge
(warrant judge) through telephone communication with the police officer
affiant and with documents exchanged by facsimile transmission, required
remand, where, although the record supported the motion judge's finding
that the officer gave a proper oath over the telephone before the issuance
of the warrant [568-570]; and although the exclusionary rule did not apply,
given that the defendant suffered no prejudice due to the issuance of the
warrant without the officer appearing personally before the warrant judge,
in violation of G. L. c. 276, § 2B, and art. 14 of the Massachusetts Declara-
tion of Rights [570-573], further findings were required concerning whether
the officer exhausted all reasonable efforts to find a judge before whom he
could personally appear [573].

Statement that in the rare case where a police officer must rely on com-
munication by telephone and facsimile transmission to obtain an otherwise
valid search warrant, the allowance of a motion to suppress evidence
requires an express finding that the officer exhausted all reasonable efforts
to find a judge before whom he could personally appear. [573]

At a criminal trial, the erroneous admission of certificates of drug analysis of
two kinds of pills without accompanying testimony by the analysts who
created them could not be said to have been harmless beyond a reasonable
doubt. [573-575]

At a criminal trial, the erroneous admission of a certificate of drug analysis
identifying vegetable matter as marijuana, without accompanying testimony
by the analyst who created it, could not be said to have been harmless
beyond a reasonable doubt, where neither police officer who testified (the
officer who seized the material and an expert witness) was asked to identify
the material as marijuana based on his training and experience. [575-577]

At a criminal trial, there was no error in the denial of the defendant's motion
to conduct voir dire of a police officer who was expected to testify as an
expert witness, where the officer's opinion evidence was of a type that has

been routinely admitted in drug cases, and where the judge instructed the jury that they need not credit expert testimony [577-578]; further, there was no merit to the defendant's argument that he was not provided with mandatory discovery, his suggestion that he was prevented from examining documents in the Commonwealth's possession, or his claims of error regarding certain aspects of the officer's actual testimony [578-580].

Discussion of issues likely to arise at retrial concerning a prosecutor's opening and closing statements. [580-581]

COMPLAINT received and sworn to in the Concord Division of the District Court Department on March 14, 2008.

A pretrial motion to suppress evidence was heard by *Stephen S. Ostrach*, J., and the case was tried before *David W. Cunis*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Kathryn Hayne Barnwell* for the defendant.

*Shirley Xiao Li Cantin*, Special Assistant District Attorney (*Bethany Stevens*, Assistant District Attorney, with her) for the Commonwealth.

IRELAND, C.J. The defendant was convicted of possession of a class C substance, clonazepam, and a class E substance, trazodone, in violation of G. L. c. 94C, § 34; possession with intent to distribute a class D substance, marijuana, in violation of G. L. c. 94C, § 32C (*a*); and a drug violation near a school or park in violation of G. L. c. 94C, § 32J. He appealed, and we granted his application for direct appellate review to consider the first impression issue whether the judge erred in denying his motion to suppress because the police officer who applied for a search warrant did not personally appear before the judge who issued the warrant. He also argues that the officer's requisite oath was not properly administered, in violation of G. L. c. 276, § 2B. As to his trial, he argues that the admission of drug certificates without the testimony of the analyst violated his constitutional rights, and that there were errors concerning the testimony of the Commonwealth's expert and the prosecutor's opening statement and closing argument. Because we conclude that the erroneous admission of the drug certificates was not harmless beyond a reasonable doubt, we reverse the defendant's convictions and remand the case for further proceedings consistent with this opinion.

*Facts and background.* We present the essential facts, reserving details for our discussion of the issues raised.

On January 20, 2008, Sergeant Timothy Lima of the Stow police department obtained a search warrant for an apartment where the eighteen year old defendant lived with his mother. The apartment is 833.9 feet from a middle school. Lima and other police officers conducted a search of the defendant's bedroom, which was occupied at the time by the defendant and two other individuals. Inside the bedroom, Lima found a backpack on the floor that contained marijuana packaged inside plastic baggies and white pills in a prescription bottle labeled "trazodone." Lima found several individual pills on a night stand and an assortment of drug paraphernalia in the room, including four compact digital scales, cut plastic baggies, "bongs," marijuana pipes with residue, "grinding instruments," rolling papers, a razor blade, and an air pump used for smoking marijuana.

At trial the Commonwealth called Detective Charles Robert Mercer of the suburban Middlesex County drug task force as an expert on the distribution of marijuana. He examined the evidence that was seized and testified that the quantity and packaging of the marijuana, as well as the paraphernalia, was consistent with possession with intent to distribute.

The drugs were admitted in evidence along with certificates of analyses from the State laboratory identifying them as marijuana, trazodone, and clonazepam. The chemical analyst did not testify; instead Lima read the results from each certificate to the jury as part of his testimony.

The defendant did not testify or call any witnesses. Through argument and cross-examination of the Commonwealth's witnesses, the defense was that the defendant was a "pothead," that the marijuana and pills belonged to one of the other individuals in his room, and that the police never saw the defendant sell drugs to anyone.

*Discussion.* 1. *Motion to suppress.* We set forth the relevant facts as found by the motion judge supplemented with uncontroverted evidence from the motion hearing. *Commonwealth* v. *Isaiah I.,* 448 Mass. 334, 337 (2007), *S.C.,* 450 Mass. 818 (2008) (court may supplement judge's findings if uncontroverted and judge explicitly or implicitly credited witnesses' testimony).

Lima was the sole witness at the hearing on the motion. His testimony and the affidavit he prepared in support of his application for a search warrant were as follows.

On the evening of Saturday, January 19, 2008,[1] the defendant's mother telephoned the Stow police department to inform them that she had found a large quantity of marijuana and cocaine inside the defendant's bedroom. Sergeant Lima went to her residence where the mother told him that the defendant had been selling drugs out of the house; that she had detected the odor of marijuana coming from inside his bedroom; and that she found marijuana and cocaine in a large backpack located in the bedroom. She informed Lima that the defendant was in Fall River that evening, presumably purchasing drugs.

The following morning Lima applied for a search warrant that would authorize him to search the defendant's bedroom. Because it was a Sunday, Lima followed a protocol to contact an "on-call" judge. After three or four unsuccessful attempts that involved, inter alia, communicating with the State police, Lima received a telephone call from a Superior Court judge (warrant judge) who was visiting family in New Jersey.

The warrant judge then went to a nearby police station and telephoned Lima at the Stow police station. Through telephone communication and documents exchanged by facsimile transmission, Lima's application and affidavit were reviewed, and the warrant judge signed a properly witnessed warrant and transmitted a facsimile to Lima. Lima had signed his affidavit under the pains and penalties of perjury, and the warrant judge signed that Lima had "made oath that the foregoing affidavit by him subscribed is true." The warrant issued no later than 11:33 A.M.

At the conclusion of his testimony detailing these exchanges, Lima stated that the warrant judge "signed the [application for the warrant] and swore me in over the phone." The motion judge further questioned Lima concerning the sequence of events. In his written findings, the motion judge stated: "[The warrant judge] *swore* [Lima] over the telephone [and] *read* [from the facsimile] the *affidavit* page by page. [The warrant judge] . . . *then* faxed back a *signed* search warrant." (Emphases added.)

---

[1]Although there was no testimony concerning this issue, we note that this Saturday fell on the weekend leading up to the Monday Dr. Martin Luther King, Jr., Day holiday.

Lima and other police officers executed the warrant at approximately noon that day. Police seized drugs and drug paraphernalia, as set forth above.

The defendant argues that the motion judge should have allowed the motion to suppress because the warrant was obtained without the proper oath, and Sergeant Lima did not personally appear before a neutral magistrate.[2]

The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights require that a warrant be issued only on probable cause, supported by oath or affirmation.[3] General Laws c. 276, §§ 1 and 2B, require an affidavit and an oath.[4] The purpose of G. L. c. 276, §§ 1-2C, is to ensure that the Commonwealth can demonstrate by a writing (i.e., affidavit) that any given search was reasonable and supported by probable cause. *Commonwealth* v. *Monosson*, 351 Mass. 327, 330 (1966). In addition, G. L. c. 276, § 2B, is a statutory prohibition against the admission of evidence without probable cause. *Commonwealth* v. *Upton*, 394 Mass. 363, 366 (1985).

"In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error, and conduct an independent review of the judge's ultimate findings and conclusions of law." *Commonwealth* v. *Stephens*, 451 Mass. 370, 381 (2008).

---

[2]As discussed *infra*, these particular grounds for challenging the warrant were not asserted, if at all, until the motion hearing. The defendant's written motions to suppress challenged the warrant on the grounds that Lima did not verify the identity of the informant (the defendant's mother), that there was insufficient probable cause supporting the warrant, and that officers did not adequately knock and announce their presence. He does not renew these arguments on appeal.

[3]The Fourth Amendment to the United States Constitution provides: "[N]o Warrants shall issue, but upon probable cause, supported by oath or affirmation . . . ."

Article 14 of the Massachusetts Declaration of Rights requires that "[a]ll warrants" must be "previously supported by oath or affirmation."

[4]General Laws c. 276, § 1, provides that a warrant may issue "upon complaint on oath."

General Laws c. 276, § 2B, requires the person seeking a warrant to "appear personally before [an authorized] court or justice" and give an affidavit. The statute shows the form the affidavit should take, and the form requires that a "Justice or Special Justice, Clerk or Assistant Clerk of the [Court]" sign the following statement: "Then personally appeared the above named [the affiant] . . . and made oath that the foregoing affidavit by him subscribed is true."

a. *Propriety and timing of oath.* The defendant claims that
there is no evidence that Lima was given the proper oath, and
even if he was, it was not administered until after the warrant
issued, in violation of the Fourth Amendment, art. 14, and G. L.
c. 276, §§ 1 and 2B. This argument is waived. At the hearing,
the defendant asked whether it was proper for someone to be
sworn over the telephone. However, because the defendant did
not raise the issue of the actual words Lima used to "make oath"
or its timing, Lima was not questioned in this regard, and the
motion judge made no findings addressing these issues in detail.[5]

Nevertheless we conclude that the motion judge found that a
proper oath was given over the telephone before the warrant
issued.[6] His findings are supported by the record, recited *supra*,
i.e., Lima's testimony; his signature on the affidavit averring it
was signed under the pains and penalties of perjury; the warrant
judge's signature on that affidavit confirming that Lima "made
oath that [his affidavit] is true"; and that the warrant judge also
crossed out the introductory statutory language, "Then person-
ally appeared before me," accurately to reflect the conditions
under which he took Lima's oath. See note 4, *supra.* See also
*Commonwealth* v. *Keefe,* 7 Gray 332, 337 (1856) (magistrate's
signature on jurat is "certificate of the magistrate that the requi-
site oath has been taken"). Cf. *United States* v. *Richardson,* 943
F.2d 547, 548 & n.1, 549 (5th Cir. 1991) (where warrant based
solely on oral testimony over telephone, violation of Fourth
Amendment where magistrate could not recall whether he used
the word "swear" when he asked officer if his statements were
true and correct). Moreover, Lima's signature under the pains
and penalties of perjury, although not required by the statute,
would subject him to a potential charge of perjury, just as an
oral oath would. See generally *State* v. *Tye,* 248 Wis. 2d 530,

---

[5]The defendant refers to a statement by the motion judge, "I suppose you
could make the argument that [the warrant judge] has no authority to give oaths
in New Jersey," as evidence that earlier he had raised the oath requirement is-
sues he now asserts. The defendant has taken the statement out of context. The
defendant was arguing whether one could rely on the fact the person signing the
warrant was really who he claimed to be (i.e., a Massachusetts judge), an argu-
ment he does not renew on appeal. The statement on which the defendant relies
was injected by the motion judge as a "law school pointer[]."

[6]Because of this conclusion, we do not address the defendant's argument
that a warrant that is signed before an oath is given is invalid.

540-541 (2001) (purpose of oath is to remind magistrate and investigator of importance and solemnity of process and to protect target of search by creating liability for perjury).

b. *Requirement to appear personally before magistrate.* Because the warrant judge was in New Jersey, Lima did not "appear personally" before him when the warrant issued, in violation of the directive of G. L. c. 276, § 2B (person seeking warrant "shall appear personally before [an authorized] court or justice"). Moreover, the warrant was constitutionally infirm because art. 14 requires, in pertinent part, that "no warrant ought to be issued but in cases, and with the formalities prescribed by the laws" (here, G. L. c. 276, § 2B).[7] See *Commonwealth* v. *Sheppard*, 394 Mass. 381, 388 (1985) (*Sheppard*).

The motion judge considered the propriety of the warrant and found it valid, noting, "Although the authorization was unusual, the combination of [facsimile transmission] and telephone was sufficient to provide the neutral magistrate's involvement [as] constitutionally required." He elaborated further on this finding at the hearing:

> "While it is confusing and certainly irregular, under the circumstances I find that the Commonwealth's efforts to obtain a valid search warrant were both reasonable, consistent with the law, and ultimately satisfactory to meet the constitutional minimum of demonstrating probable cause to a neutral magistrate who had an adequate time to review and make [an] independent determination. I find those requirements were met."

The defendant argues, in essence, that because he was prejudiced by the violation of his statutory and constitutional rights, the exclusionary rule should apply to the evidence seized under the warrant.[8] We do not agree.

The exclusionary rule is a remedy to an illegal search; its

---

[7]We agree with the defendant that he raised the personal appearance issue, however briefly, at the motion hearing. The motion judge was the first to mention that Lima did not personally appear before the warrant judge. We interpret counsel's subsequent question whether one could be sworn over the telephone as raising the issue whether Lima had to appear personally before the judge.

[8]There is no merit to the defendant's argument, made without citation to authority, that because there was a violation of art. 14 and the statute, the exclusionary rule applies whether or not he was prejudiced.

purpose is to deter police misconduct and preserve judicial integrity by dissociating courts from unlawful conduct. *Commonwealth* v. *Brown*, 456 Mass. 708, 715 (2010), and cases cited. See *United States* v. *Leon*, 468 U.S. 897, 920-921 (1984). Rigid adherence to a rule of exclusion is unnecessary in situations where these purposes are not furthered. *Commonwealth* v. *Brown, supra.*

In *Sheppard, supra* at 381, 382, 385-387, this court refused to apply the exclusionary rule to the execution of a search warrant that failed to meet the particularity requirement of both G. L. c. 276, § 2,[9] and art. 14. The court stated that the Legislature's intent in enacting G. L. c. 276 was to track the particularity requirement of art. 14 in order to protect individuals from a general search and to have a writing by which the defendant could challenge the scope of the officers' authority to search. *Id.* at 389. The court noted that neither art. 14 nor the statute specifies that exclusion is the remedy for a violation of their requirements. *Id.* at 388, 391.

*Sheppard* recognized that, in cases where there was a violation of the probable cause requirement for a warrant to issue, the exclusionary rule applied because the defendant suffered prejudice either because of his right to be free from unreasonable searches and seizures, or because the defendant could not challenge the warrant and thus the violation was substantial. *Sheppard, supra* at 389, and cases cited. However, the court stated that the facts in *Sheppard* were distinguishable from those probable cause cases because the violation of the particularity requirement was technical rather than substantial. It further concluded that the defendant was not prejudiced where police conducted the search within the limits of the warrant and, because there was a writing, the defendant was able to challenge the scope of the search. *Sheppard, supra* at 390, 391.

We must first decide whether the defendant was prejudiced by the circumstances here because, if he were, it obviates the need for further analysis of the appropriate remedy for the officer's violation of the statute.

---

[9]General Laws c. 276, § 2, in pertinent part, states: "Search warrants shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for."

Here, the defendant argues that he was prejudiced because there were no procedural safeguards to ensure that the warrant was properly issued. In particular, he claims that he was prejudiced because the warrant returned and certified by the clerk did not have the warrant judge's signature and that there was no specific authorization for how the search must be executed.

It is apparent from the record that copies of the documents with the warrant judge's signature (or with details about the scope of the search) were not in the clerk's folder and, therefore, the defendant was not provided with a signed copy of the actual warrant. However, Lima testified that he returned all the documents, including copies with the warrant judge's signature, to the clerk when he returned the warrant. The motion judge credited this testimony and found that Lima "filed the [facsimile transmission] and signed warrant."[10] It follows, therefore, that the error in the warrant return procedure is ministerial and not a ground to void a valid warrant. *Commonwealth* v. *Cromer*, 365 Mass. 519, 521 n.3 (1974), and cases cited. See generally *Commonwealth* v. *Ocasio*, 434 Mass. 1, 5 (2001) (where warrant not returned, suppression not warranted because terms of warrant established by secondary means, allowing defendant opportunity to challenge warrant).[11]

Here, Lima testified that he searched the defendant's bedroom

---

[10] We note that, because the documents were prepared through facsimile transmission, there is no "original" copy of the signed warrant.

[11] There is no merit to the defendant's argument that he was prejudiced because he was unable to verify signatures or obtain testimony from the warrant judge. When counsel received the copies of the unsigned documents, she could have requested the originals or could have included the apparently insufficient warrant as a ground for the motion to suppress, thereby putting the Commonwealth and the motion judge on notice. Alternatively, once this issue was called to counsel's attention by the motion judge, and she questioned whether the signature was the warrant judge's, she could have requested a continuance of the hearing.

In any event, the motion judge did not err in concluding that the warrant judge signed the warrant. Lima testified that he contacted the State police and the judge telephoned him thereafter. It would be incredible that a complete stranger who was in New Jersey would have telephoned Lima at that particular time, identified himself using the correct name of a judge of the Massachusetts Superior Court, and then would have gone to a New Jersey police station to continue a ruse. Moreover, the individual also had to have the knowledge that the warrant needed to be witnessed properly and that the jurat needed modification to reflect that Lima did not personally appear.

as specified by the warrant, and because a writing exists, the defendant was able to challenge the scope of the search. In the circumstances here, there was no prejudice.[12] See *Sheppard, supra* at 389-391.

Our conclusion that the defendant suffered no prejudice does not end the inquiry. Under art. 14 and G. L. c. 276, § 2B, the oath and personal appearance are required to support the affidavit that establishes probable cause for the warrant. See notes 3 and 4, *supra.* We conclude that, in the rare case where an officer must rely on communication by telephone and facsimile transmission to obtain an otherwise valid search warrant, the motion judge must make an express finding that the officer exhausted all reasonable efforts to find a judge before whom he could personally appear. Requiring such a finding ensures that an officer, whose attempt to obtain a proper warrant is thwarted by a failure of the system of on-call judges, is not penalized, while acting as a deterrent to police misconduct so that warrants are issued on probable cause. We hold that, if the motion judge finds that the officer did not make every reasonable effort, the evidence seized must be suppressed.

In this case, Lima testified that the nearest judge was in the Roxbury section of Boston, but he was not asked why he did not bring the warrant application before that judge. He also was not asked details about all the other efforts he made. Therefore, before any retrial may take place, the trial judge must have further findings from the motion judge concerning whether Lima exhausted all reasonable efforts to find a judge before whom he could appear.

2. *Admission of drug certificates.* The defendant's trial occurred shortly before the United States Supreme Court issued *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009). The defendant argues, and the Commonwealth does not dispute, that the admission of drug certificates identifying clonazepam, trazodone, and marijuana, without the testimony of the chemical analysts, violated the defendant's right to confrontation. *Id.* at 2532, 2542. The issue, then, is whether their admission was

---

[12]The defendant also claims that he was prejudiced because Lima never testified that he had had a copy of the warrant with him when the search was executed. We place no emphasis on this argument, as the defendant did not raise it below where such testimony could have been elicited.

harmless beyond a reasonable doubt; that is, the court must be satisfied that the Commonwealth proved beyond a reasonable doubt that the certificate had "little or no effect on the verdicts." *Commonwealth* v. *Vasquez*, 456 Mass. 350, 352, 362 (2010). The inquiry is whether the Commonwealth's circumstantial evidence is so "overwhelming" as to "nullify any effect" that the admission of the certificate might have had on the verdict. *Id.*, quoting *Commonwealth* v. *Tyree*, 455 Mass. 676, 704 n.44 (2010). The burden on the Commonwealth is a "stringent one"; we must be certain that the verdict is "unattributable to the error." *Commonwealth* v. *Vasquez*, *supra* at 361, quoting *Sullivan* v. *Louisiana*, 508 U.S. 275, 279 (1993).

a. *Clonazepam.* Because the Commonwealth concedes that the admission of the certificate identifying clonazepam was not harmless beyond a reasonable doubt, we vacate the defendant's conviction on that possession charge and discuss the effect of the certificates identifying trazodone and marijuana.

b. *Trazodone.* The white pills that were identified in the certificate were in a prescription bottle with the defendant's mother's name and address on it and labeled "trazodone." The pills and bottle were admitted in evidence but were not sent to the jury room. The judge explained that "we don't typically send in . . . drugs [but] [w]e will send in the certificates of analysis."

Citing *Commonwealth* v. *Greco*, 76 Mass. App. Ct. 296 (2010), the Commonwealth argues that the circumstantial evidence introduced at trial rendered the admission of the certificate harmless beyond a reasonable doubt. We disagree.

In the *Greco* case, not only did the Commonwealth have a prescription bottle with the label matching the drug that was identified by the certificate, but also each pill was stamped with the name of the drug. *Id.* at 297. In addition, the prescription bottle had the defendant's name on it and was from a pharmacy the defendant was standing in front of when he was seen handing some of the pills from the bottle to another individual. *Id.* Further, when he was being questioned, the defendant stated that the other individual "gave me ten bucks for the pills"; police found a ten dollar bill when the defendant was searched. *Id.*

Here, there was no additional evidence other than the pills and the prescription bottle. In these circumstances we cannot

say that the certificate had little or no effect on the verdict. *Commonwealth* v. *Vasquez, supra* at 362. The defendant's conviction of possession of trazodone is reversed.

c. *Marijuana.* The Commonwealth argues that there is enough circumstantial evidence that the vegetable substance that Lima seized was marijuana to make the admission of the drug certificate of analysis harmless beyond a reasonable doubt.

At trial, Lima read the conclusion from the drug certificate that "the vegetable matter" was marijuana.[13] He also testified that, at the police academy, he was exposed to the sight and odor of burnt and unburnt marijuana, and that, over the course of his twenty-three year career, he had taken some courses in basic narcotics investigation. He stated that he found "a large amount of marijuana" in the defendant's bedroom, packaged in plastic baggies, as well as several instruments associated with smoking marijuana: "bongs," rolling papers, and a "marijuana pipe with residue."

In addition, the Commonwealth's expert witness, Detective Mercer, testified that through his training and experience he was familiar with marijuana and had seen it, and he described it as "dried out . . . vegetable matter." He also stated that he spoke with Lima, examined all the evidence that Lima had seized, read Lima's police report, and listened to Lima's trial testimony. He stated that marijuana was seized by Lima and it "appeared to be eight [one] ounce packages" of marijuana.[14] He stated that it could be smoked in a variety of ways, including "by marijuana joints, by pipes, or by bongs," and that the drug "has been eaten."

---

[13]The certificate stated: "[This material] has been examined with the following results: The vegetable matter was found to contain marijuana, as defined in Chapter 94C, Controlled Substance Act, Section 31, Class D."

[14]Mercer's exchange with the prosecutor was as follows:

THE PROSECUTOR: "Detective, you previously testified that you observed the marijuana that was seized —"

THE WITNESS: "Yes."

THE PROSECUTOR: "— by Sergeant Lima in this case. Can you describe how these drugs were packaged?"

THE WITNESS: "I did not weigh them myself, but they appeared to be eight individual [one] ounce packages."

Further, the drug certificate of analysis was admitted in evidence; the judge stated that he would not be sending the drugs into the jury room but would "send in the certificates of analysis"; and the judge had instructed the jury that they "may consider" but were "not required to accept [the certificates]." The prosecutor did not rely on the drug certificate in closing argument.

As the defendant points out, Lima was not asked to identify any of the drugs based on his experience as a narcotics officer or whether he had conducted independent field tests. See generally *Commonwealth* v. *Connolly*, 454 Mass. 808, 831 (2009) (field test conducted on substance that tested positive for cocaine); *Commonwealth* v. *Rodriguez*, 75 Mass. App. Ct. 235, 244-245 (2009) (where officer not asked to identify marijuana based on his experience as narcotics officer, admission of drug certificate not harmless beyond reasonable doubt). The defendant also argues that Mercer's expert testimony related solely to the charge of possession with intent to distribute and therefore his testimony was merely circumstantial evidence that the substance was marijuana. See *Commonwealth* v. *Pimentel*, 76 Mass. App. Ct. 236, 239-240 (2010) (admission of drug certificate identifying heroin not harmless beyond reasonable doubt where no expert offered opinion as to its nature). To support his argument he relies particularly on *Commonwealth* v. *Vasquez, supra* at 364 (erroneous admission of drug certificates of analysis not harmless beyond reasonable doubt where Commonwealth relied on testimony of several police officers, who did not testify to any expertise or training in chemical analysis and who relied on drug certificates in determining substance was cocaine).

Mercer was called to testify concerning the charge of possession with intent to distribute; the identification of the substance he examined in the plastic baggies as marijuana was merely implicit in that testimony. See note 14, *supra*. In *Commonwealth* v. *MacDonald*, 459 Mass. 148, 156 (2011), this court discussed an expert's visual (and tactile) identification of marijuana. At trial, the expert examined the substance through a clear plastic bag and stated that the seeds were "consistent with" marijuana. *Id.* at 158. We stated that our jurisprudence allowed proof of a substance solely through the testimony of individuals who were

familiar with it. *Id.* at 156-157, and cases cited. We distinguished the identification of marijuana from compounds such as cocaine stating that, because marijuana consists "of the dried leaves, stems, and seeds of a plant which anyone reasonably familiar therewith should be able to identify by appearance," the risk of misidentification by an expert was lower as compared to the identification of drug compounds. *Id.* at 156-157, quoting *State* v. *Maupin*, 42 Ohio St. 2d 473, 480 (1975).

The identification of marijuana makes this case distinguishable from the *Vasquez* case, where the identity of cocaine was at issue. However, the *MacDonald* case also is distinguishable from this case, because it concerned the sufficiency of the evidence, whereas here, the issue is whether the admission of a drug certificate of analysis was harmless beyond a reasonable doubt. In addition, the expert in the *MacDonald* case was called to identify the substance as marijuana. *Commonwealth* v. *MacDonald*, *supra* at 150. Here, Mercer was called as an expert concerning the charge of intent to distribute and thus was never asked directly to identify the marijuana. See note 14, *supra*. Because neither Mercer nor Lima was asked to identify the marijuana based on his training and experience, we cannot conclude that the admission of the drug certificate identifying the marijuana was harmless beyond a reasonable doubt. See *Commonwealth* v. *Vasquez*, *supra* at 361 (standard of harmlessness is "stringent").

Accordingly, we must reverse all the defendant's convictions.

3. *Other issues.* Because the Commonwealth may choose to retry the defendant, we consider other issues raised by his claims of error that may be material to a retrial.

a. *Expert's testimony.* i. Before trial, the Commonwealth provided the defendant with Mercer's curriculum vitae, which included a list of training programs Mercer conducted for police officials, and which noted as well his twenty years of experience.[15] The defendant moved to exclude Mercer's testimony on the ground that the Commonwealth failed to provide, through discovery, copies of the books, journal articles, and police reports on which he was going to base his opinion. He also moved to conduct a voir dire of Mercer to determine whether his opinion was based

---

[15]We need not recite Mercer's education and experience, because that is not what the defendant challenged.

on reliable methodology. *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25-27 (1994), discussing and quoting *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-593 (1993) (if challenged, judge must make "preliminary assessment of whether the reasoning or methodology underlying [expert] testimony is scientifically valid"). The judge denied both motions, stating that the defendant could conduct his cross-examination based on Mercer's curriculum vitae. The defendant claims that this was error.

There is no merit to the defendant's argument that, because he was not allowed to conduct a voir dire, his cross-examination was rendered ineffective. A "*Daubert-Lanigan* hearing may not be necessary where the expert's methodology has previously been accepted as reliable in the relevant field[; however,] a party [may request] a hearing on the belief that the science in a particular field has advanced to the point where previously accepted expert testimony would no longer be considered reliable." *Commonwealth* v. *Sliech-Brodeur*, 457 Mass. 300, 327 & n.39 (2010). Mercer's opinion evidence is of a type that has been routinely admitted in drug cases. See, e.g., *Commonwealth* v. *MacDonald*, *supra* at 150-153. See also *Commonwealth* v. *Shanley*, 455 Mass. 752, 763 n.15 (2010) (testimony concerning dissociative amnesia and recovered memory). The defendant makes no claim that new methods or understandings exist. Moreover, the judge instructed the jury that they need not credit expert testimony.[16] There was no error.

Concerning the defendant's argument that he was not provided with mandatory discovery, Mass. R. Crim. P. 14 (a) (1) (A) (vi), as appearing in 442 Mass. 1518 (2004), requires the Commonwealth to disclose to the defense "[i]ntended expert opinion evidence [including] the identity, current curriculum vitae, and list of [the expert's] publications and all reports prepared by the expert that pertain to the case." The Commonwealth states that it did comply with this mandate. The defendant does not challenge the Commonwealth's statement or provide copies of what he was given to support his claim of its inadequacy. There was

---

[16]For these reasons, the defendant's claim that the judge did not independently validate the bases of Mercer's expertise, apart from the Commonwealth's presentation of it through Mercer's testimony, also has no merit. See *Commonwealth* v. *Cantres*, 405 Mass. 238, 246 (1989) (allowing testimony implies prior determination of witness's expertise).

no error. Furthermore, there is no merit to the defendant's suggestion that the Commonwealth also violated G. L. c. 218, § 26A, second par., which allows the defense to examine documents in the Commonwealth's possession, where the defendant does not assert that he was prevented from conducting such examination.

ii. The defendant also claims that Mercer's trial testimony concerning the Commonwealth's theory that the defendant intended to distribute the marijuana was improper.

Mercer testified as follows. Marijuana dealers buy larger amounts of the drug because they get it at a cheaper price; they then package it in smaller quantities, typically one ounce, and sell it. The purchasers then break up the ounce into even smaller packages. To avoid retribution, the dealer uses scales to weigh it as precisely as possible. When a dealer buys a large amount of marijuana, it is unlikely that it will be kept for personal use because as it dries out it loses its potency and is less pleasurable to smoke. Mercer noted, "It burns and gets hotter and it's more irritating to smoke." The street value of one-eighth of one ounce of low-grade marijuana is forty dollars, whereas one-eighth of one ounce of "very high grade marijuana" would be sold for seventy-five to eighty dollars.

Although Mercer did not weigh it, he testified that the marijuana Lima seized was packaged in eight individual one-ounce packages, and that the four scales Lima seized were consistent with the type of scales dealers used to weigh drugs.

At the conclusion of his testimony, Mercer had the following exchange with the prosecutor:

> THE PROSECUTOR: "In examining this evidence, did you form an opinion as to whether the drugs in this case are or are not consistent with drug distribution or possession with intent to distribute, rather."
>
> THE WITNESS: "Yes."
>
> THE PROSECUTOR: "What was that opinion?"
>
> THE WITNESS: "That it was — that the drugs are pos-

session with intent. The person that possessed the drugs had the intent to sell them."

THE PROSECUTOR: "Your opinion is that the evidence seized is consistent with a person possessing to distribute?"

THE WITNESS: "Yes, as a result of all of the different pieces of evidence."

· We note that the Commonwealth concedes that it was error to admit Mercer's opinion testimony, "that the drugs are possession with intent. The person that possessed the drugs had the intent to sell them." We assume that the Commonwealth will not repeat this error at retrial.

The defendant claims that Mercer's testimony concerning the weight of the marijuana was not an independent assessment. It is true that the prosecutor asked whether Mercer heard Lima's testimony that Lima seized eight ounces of marijuana, but in fact, Lima did not so testify. However, Mercer's later testimony that he did not weigh it but that it "appeared to be" eight one-ounce packages of marijuana was an independent assessment of its weight, based on Mercer's expertise. See *Commonwealth* v. *Connolly*, 454 Mass. 808, 831-832 (2009) (experienced officer as well as jurors may determine whether cocaine weighed more than four ounces).

There is no merit to the defendant's argument that it was error to admit Mercer's testimony about the value of high-grade and low-grade marijuana because it was irrelevant. This testimony was relevant (contrast *Commonwealth* v. *Kozec*, 399 Mass. 514, 524-526 [1987]), to demonstrate the defendant's intent to sell the marijuana rather than to possess it for personal use.

b. *Prosecutor's statements.* In his opening statement the prosecutor stated, in relevant part: "This case is about a business, . . . [the defendant] sells [his] product for money, a lot of money. . . . The officers found approximately eight ounces of marijuana, a value of at least around $5,000 in cash on the street." He reiterated this point in his closing argument, stating:

"This was a business. We heard that one person would be

hard pressed to smoke an ounce of weed. There were eight ounces of weed. We heard that a person buying marijuana for their personal use buys it in small bags. There were eight large one ounce bags. Around $5,000 worth of weed if you sold it individually."

The remarks about the $5,000 value were not based on Mercer's evaluation of the actual street value of the marijuana in the defendant's possession. The defendant argues that the prosecutor's opening statement and closing argument were improper and the prejudicial effect on the defendant was magnified by the improper admission of Mercer's testimony. We have concluded that Mercer's testimony was properly admitted. At a retrial, should the prosecutor wish to argue the street value of the marijuana that was seized, testimony to that effect should be elicited from the expert.

*Conclusion.* For the reasons set forth above, we reverse the defendant's convictions, set aside the verdicts, and remand the case to the District Court, where the motion judge shall make further findings whether Sergeant Lima exhausted all reasonable efforts to find a judge before whom he would personally appear when he obtained the search warrant. The trial judge, when furnished with further findings on the motion to suppress, shall proceed consistent with this opinion.

*So ordered.*