Agnes, J.
(concurring). I agree with the majority that the evience seized from the trunk of the defendant’s vehicle must be suppressed because the police violated an explicit departmental policy that requires them to check on the status of a warrant “[i]m-mediately prior to” an arrest by contacting their operations center “so that the computerized Warrant Management System [WMS] can be checked to determine if the outstanding warrant is still active.” Ante at 699, quoting from Boston police department special order number 95-31 (June 2, 1995). I also agree with the majority that a rule of reasonableness must be applied, because in circumstances where the police have neither sufficient time nor the opportunity to verify that an arrest warrant is still outstanding, suppression of evidence may have no deterrent effect on future police misconduct. I write separately because in my view, even apart from an explicit departmental policy such as the Boston police department policy involved in this case, the application of the exclusionary rule in a case such as this may turn on whether *701 and when the police checked the WMS.[1]
*702 “The exclusionary rule is a remedy to an illegal search; its purpose is to deter police misconduct and preserve judicial integrity by dissociating courts from unlawful conduct.” Commonwealth v. Nelson, 460 Mass. 564, 570-571 (2011). There are multiple sources of authority for the application of the exclusionary rule under Massachusetts law. In some circumstances, evidence obtained by the police in violation of the law must be excluded from use at trial based on the demands of art. 14 of the Massachusetts Declaration of Rights. See, e.g., Commonwealth v. Ford, 394 Mass. 421, 426-427 (1985) (warrantless storage search of trunk of automobile conducted without consent, probable cause, or exigent circumstances and not conducted pursuant to standard procedures established by the police department). See also Commonwealth v. Lora, 451 Mass. 425,438-440 (2008) (exclusionary rule applicable to evidence seized after traffic stop based on racial profiling in violation of constitutional right to equal protection of laws). In other cases, the Supreme Judicial Court has stated that “the application of the exclusionary rule is appropriate where it is ‘inherent in the purpose of a statute which the government has violated,’ and that such a purpose is inherent in ‘statutes closely associated with constitutional rights.’ ” Commonwealth v. Hernandez, 456 Mass. 528,532 (2010), quoting from Commonwealth v. LeBlanc, 407 Mass. 70, 75 (1990). See, e.g., Commonwealth v. Jones, 362 Mass. 497, 502-503 (1972) (evidence of identification made at police station after intentional refusal to grant defendant his statutory right, under G. L. c. 276, § 33A, to use telephone was suppressed); Commonwealth v. XJpton, 394 Mass. 363, 366-369 (1985) (G. L. c. 276, § 2B, governing affidavits in support of applications for search warrants, requires exclusion of evidence seized pursuant to search warrant issued without showing of probable cause in application); Commonwealth v. White, 469 Mass. 96, 99-103 (2014) (under G. L. c. 276, § 1, police are authorized to conduct a search incident to arrest “only (1) for the purpose of seizing evidence of the crime for which the arrest has been made in order to prevent its destruction or concealment or (2) for the purpose of removing any weapon the person arrested might use to resist arrest or to escape”; evidence seized exceeding lawful scope of search incident to arrest suppressed). Further, the Supreme Judicial Court recognizes that in some cases it is appro *703 priate to apply the exclusionary rule to suppress evidence based on the common law. See Commonwealth v. Scalise, 387 Mass. 413, 417 (1982) (evidence seized pursuant to search warrant supported by probable cause must be suppressed as matter of common-law rule forbidding police officers from making unannounced entry in absence of limited circumstances permitting exception to knock and announce mie).
The WMS replaced a centuries-old system, in which the existence of an arrest or default warrant depended on whether an authentic paper warrant issued by a court could be located, with a new standard based on whether an entry exists in a statewide electronic database. The law enforcement community has embraced the WMS not only because it provides speedy access to warrant information around the clock, but also because it protects police officers who rely on it from the risk of criminal prosecution or civil liability from “false arrest, false imprisonment, or malicious prosecution or arrest by false pretense.” G. L. c. 276, § 23A. See note 1, supra. I take judicial notice of the fact that electronic inquiries into WMS are made by the police and other law enforcement officers and agencies hundreds, if not thousands, of times each day when motor vehicles are stopped, when suspicious persons are encountered on the street, when persons are arrested, and in aid of investigations. Also, the WMS must be consulted by police officers, sheriffs, judges, and court personnel before a person is released from custody. See G. L. c. 276, § 29. The existence of the WMS and the ease with which it may be accessed not only safeguards police officers, but also ensures that the liberty of individuals is not unlawfully infringed, and protects the public from the risk of injury or death from persons who otherwise might be released from custody despite outstanding warrants for serious crimes. Because the use of the WMS by the police is so frequent and extensive, in my opinion, when an arrest is made pursuant to a warrant that turns out to have been recalled, as in this case, and the police have failed to verify within a reasonable time before the arrest whether the warrant is outstanding (assuming that the police have both access to and an opportunity to conduct such verification), the failure to determine that the warrant no longer exists is not reasonable, and the evidence obtained as a result of the arrest should be suppressed. See Commonwealth v. Upton, 394 Mass, at 367 n.4 (“development of exclusionary rules in light of statutory provisions is not uncommon in this Commonwealth”).
*704 How to define what is a reasonable time prior to an arrest within which the police must check the WMS is not a question that need be answered here, as the determination may vary depending on circumstances. Nor need we decide whether checking the system at 1:00 p.m. prior to an arrest at approximately 5:00 pm. that same day was in itself reasonable or unreasonable, because the Boston police special order requiring that the police check the WMS “[immediately prior” to an arrest provides a clear answer to that question in this case.

The statute creating the WMS, G. L. c. 276, § 23A, as amended through St. 2010, c. 256, § 123, reads, in its entirety, as follows:
“Whenever a court is requested to issue a warrant, the requesting authority shall provide to the court the person’s name, last known address, date of birth, gender, race, height, weight, hair and eye color, the offense or offenses for which the warrant is requested, a designation of the offense or offenses as felonies or misdemeanors, any known aliases and any such information as shall be required for a warrant to be accepted by the criminal justice information system maintained by the department of criminal justice information services. A warrant which contains the above information as provided by the individual for whom the warrant is being issued shall not be nullified if such information is later found to be inaccurate. An individual or law enforcement official seeking issuance of a warrant which does not contain all of the above required fields may apply to the clerk of the court for an exemption from this requirement. Such exemption shall be automatically granted upon the request of any law enforcement official or agency. No rights regarding the validity of a warrant may arise from such requirements not being met. Such information and the name of the police department responsible for serving the warrant shall be entered by the clerk’s office into a computer system to be known as the warrant management system. All warrants appearing in the warrant management system shall be accessible through the criminal justice information system, maintained by the department of criminal justice information services to law enforcement agencies and the registry of motor vehicles. The warrant shall consist of sufficient information electronically appearing in the warrant management system, and a printout of the electronic warrant from the criminal justice information system shall constitute a true copy of the warrant. Such warrants appearing electronically in the warrant management system and, in turn, in the criminal justice information system, shall constitute notice and delivery of said warrants to the police department responsible for serving the warrant. Whenever a warrant is recalled or removed, the clerk’s office shall, without any unnecessary delay, enter the same in the warrant management system which entry shall be electronically transmitted to the criminal justice information system.
“No law enforcement officer, who in the performance of his duties relies in good faith on the warrant appearing in the warrant management system and, in turn, the criminal justice information system, shall be liable in any criminal prosecution or civil action alleging false arrest, false imprisonment, or malicious prosecution or arrest by false pretense.
“The issuing court shall provide notification, either before the issuance of a default or arrest warrant or no later than 30 days after the issuance of the warrant, to the subject of the warrant. Such notice shall contain the following information: the name and address of the issuing court, a description of the charge for which the warrant is being issued, a description of the method by which the individual may clear the warrant and a summary of the consequences the individual may face for not responding *702 to the warrant. Such notice shall be deemed satisfactory if notice is mailed to the address stated on the warrant.”