NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13333

COMMONWEALTH vs. KIESON CUFFEE.

Hampden.        January 6, 2023. – May 15, 2023.

Present: Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt, & Georges, JJ.

Practice, Criminal, Discovery, Argument by prosecutor. Police, Records. Evidence, Police report, Relevancy and materiality. Constitutional Law, Equal protection of laws.

Indictment found and returned in the Superior Court Department on January 17, 2019.

A pretrial motion for discovery was heard by Jane E. Mulqueen, J., and the case was tried before Francis E. Flannery, J.

The Supreme Judicial Court granted an application for direct appellate review.

Molly Ryan Strehorn for the defendant.
John A. Wendel, Assistant District Attorney, for the Commonwealth.
Chauncey B. Wood, Kevin S. Prussia, Timothy A. Cook, Asma S. Jaber, & Douglas J. Plume, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.
Radha Natarajan, Katharine Naples-Mitchell, Audrey Murillo, Matthew R. Segal, Jessie J. Rossman, & Alexandra Arnold, for American Civil Liberties Union of Massachusetts, Inc., & others, amici curiae, submitted a brief.

GAZIANO, J.  A Superior Court jury convicted the defendant of unlawful possession of a firearm, in violation of G. L. c. 269, § 10 (a).  The charge arose from an investigation by two Springfield police detectives into a report of a shooting in a crowded residential area, and the subsequent discovery of a firearm that allegedly had been discarded by the defendant as he fled from the officers.  The primary issue in this appeal is whether the defendant established that discovery of police records would be relevant and material, see Mass. R. Crim. P. 14 (a) (2), as appearing in 442 Mass. 1518 (2004), to a claim of selective enforcement.

Before trial, the defendant filed a motion for discovery of police reports and field interrogation and observation reports where the two detectives who participated in his arrest were either the reporting officer or the assisting officer, for a period of two years, beginning one year prior to his arrest through one year after his arrest.  The defendant maintained that the discovery was relevant and material to the question whether the police investigation was motivated improperly by race, in violation of his constitutional right to equal protection of the laws.  Finding that Commonwealth v. Long, 485 Mass. 711 (2020), was not applicable to pedestrian stops and that, even if it were, the defendant's motion for discovery did

not meet the standard for relevance under Mass. R. Crim. P. 14, a Superior Court judge denied the motion. A single justice of this court subsequently denied the defendant's petition for extraordinary relief pursuant to G. L. c. 211, § 3. Following the jury's guilty verdict, the defendant filed an appeal. We then allowed his petition for direct appellate review.

We conclude that there was no abuse of discretion in the motion judge's decision to deny the motion for discovery. To be entitled to such discovery, a defendant must establish "a threshold showing that the material he [or she] seeks is relevant to a claim of selective enforcement." Commonwealth v. Bernardo B., 453 Mass. 158, 169 (2009). See Long, 485 Mass. at 724-725; Commonwealth v. Betances, 451 Mass. 457, 462 n.6 (2008). The defendant's motion did not meet even this minimal standard. See Long, supra at 720-721, 725-726.

In addition, the defendant contends that a new trial is required because the prosecutor's improper closing argument created a substantial risk of a miscarriage of justice. Although some of the prosecutor's remarks were improper, the remarks did not give rise to a substantial risk of a miscarriage of justice, and do not warrant a new trial.[1]

---

[1] We acknowledge the amicus briefs of the Massachusetts Association of Criminal Defense Lawyers, and the American Civil Liberties Union of Massachusetts, Inc., Criminal Justice

1. Background. a. Day of shooting. On November 8, 2018, at about 1:34 P.M., Springfield police homicide Detectives Matthew Longo and Eric Podgurski responded to a ShotSpotter[2] activation report of multiple gun shots having been fired in the vicinity of an address on Grand Street. As they were heading to that location in their unmarked cruiser, the detectives, who were wearing plain clothes, turned onto White Street. One block from the reported location of the shots having been fired, the officers saw a man, later identified as the defendant, running in a direction away from the scene (and therefore toward the detectives). The man was Black, wore his hair in dreadlocks, and had on a black sweatshirt and dark pants.

As he ran, the defendant was exhibiting an unnatural gait. He kept his right hand pinned to the right side of his body, while his left arm swung freely. He also appeared to have a heavy object tucked in his waistband. Based on their training and the defendant's proximity to a shooting, the detectives believed that the defendant was carrying a handgun without a holster; also based on their training and experience, they believed that someone carrying an unholstered gun was more

---

Institute at Harvard Law School, and New England Innocence Project.

[2] A "ShotSpotter" system "identifies firearm discharges by sound and directs officers to the general location of the shots." Commonwealth v. Evelyn, 485 Mass. 691, 694 (2020).

likely not to have a firearms license. The defendant apparently noticed the police officers and their vehicle, which looked like a marked cruiser without the usual police markings or a light bar. He slowed to a walk, pulled up his hood, and stepped into a corner convenience store.

The detectives viewed the defendant's behavior as suspicious. They turned their cruiser around, parked in front of the convenience store, and followed the defendant inside. Once inside, they separated so that they could locate and converge on the defendant from different sides. Within seconds after entering the store, Longo saw the defendant at the rear of the premises. At that point, the defendant was wearing a white shirt. Longo approached, identified himself, and ordered the defendant to "[s]how [his] hands."

The defendant turned his body away from Longo, in a manner that shielded his right side from the officer. When Longo attempted to grab the defendant's right arm, a brief and violent struggle ensued. Longo saw the defendant holding a gun near his right hip, and forcefully shoved the defendant face-first into a metal rack while yelling, "[H]e's got a gun . . . he's got a gun," and unholstering his service weapon. Podgurski, who was approaching from a different angle, saw the firearm in the defendant's right hand. Podgurski sought cover, placed his hand

on his weapon, and called for backup.  The defendant, bloody from being shoved into the rack, ran out of the store.

Podgurski and Longo chased after him.  They were able to capture and arrest him at gunpoint a short distance from the store.  The defendant did not have a weapon on his person, and the officers suspected that he had left the gun in the store, because they had not seen a gun in his hand while he was running out the door.  Longo returned to the store to search for the weapon, along with other officers who had arrived to assist.  One of those officers, whom Longo directed to the area of the struggle, found a .380 caliber Sig Sauer pistol on a shelf behind some cans that had been knocked over.  In addition to a live round in its chamber, the gun was loaded with a magazine containing three live rounds of ammunition stamped "[380] Auto Blazer."  At the scene of the shooting on Grand Street, investigators recovered three spent cartridge casings stamped "380 Auto Blazer" and one projectile.  Officers also found a black hooded sweatshirt in the doorway of the convenience store, as well as the defendant's cell phone.

b.  <u>Trial</u>.  The defendant was tried before a Superior Court jury on charges of unlawful possession of a firearm, assault by means of a dangerous weapon (two counts), assault and battery, and resisting arrest.

The defendant pursued a Bowden defense; he argued that deficiencies in the police investigation created reasonable doubt. See Commonwealth v. Avila, 454 Mass. 744, 745 n.1 (2009), citing Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980). In particular, the defendant maintained that the police conducted a slipshod investigation because they (1) failed to use available ballistics testing to determine whether the .380 caliber Sig Sauer pistol allegedly possessed by the defendant had fired the shell casings or the projectile recovered at the scene; (2) did not test for the presence of gunshot residue on the defendant or his clothing to determine whether he recently had fired a gun; and (3) chose not to apply for a warrant to search the defendant's cell phone for incriminating information connecting him to the shooting or to the firearm. The defendant also pointed out that his sweatshirt and cell phone were destroyed before trial, by a Springfield police officer assigned to the property and evidence room, who mistakenly believed that the case had been dismissed.

After a six-day trial, the jury found the defendant guilty of unlawful possession of a firearm, and not guilty of the other four counts before them.[3] At a bifurcated proceeding, the defendant pleaded guilty to being an armed career criminal and

---

[3] The Commonwealth entered nolle prosequi on three counts.

was sentenced to from eight to ten years in State prison.  The defendant filed a timely appeal, and we allowed his petition for direct appellate review.

2.  Discussion.  a.  Motion for discovery.  Approximately two years after being indicted, and while his motion to suppress was pending, the defendant filed a motion for discretionary discovery, pursuant to Mass. R. Crim. P. 14 (a) (2), seeking police reports and field interrogation and observation reports (FIOs), for a two-year period, in which Longo or Podgurski was the arresting or assisting officer.  The discovery was relevant, he argued, to a determination whether the detectives had been engaged in discriminatory law enforcement tactics in violation of the Fourteenth Amendment to the United States Constitution and arts. 1 and 10 of the Massachusetts Declaration of Rights. A judge, who was not the trial judge, denied the motion.  We review a decision on a discovery motion for abuse of discretion. See Commonwealth v. Lowery, 487 Mass. 851, 869-870 (2021).

In an affidavit attached to his motion, defense counsel averred that the defendant, a Black man, was stopped by two Caucasian police detectives responding to a report of shots fired in the area.  The justification for the stop, counsel asserted, was "an alleged observation" by Longo and Podgurski that the defendant "was running east on the sidewalk," had an "unnatural gait," and "appeared to be supporting a weighted

object on his right side with his right hand."  In addition to
stating that Long is inapplicable to pedestrian stops, the judge
determined that, even if it were applicable, "the defendant has
not met the relevance standard under Mass. R. Crim. P. 14 for
the requested documents on this set of facts."[4]

"A defendant has a right to reasonable discovery of
evidence concerning the totality of circumstances" of alleged
discriminatory law enforcement.  Long, 485 Mass. at 725.
Discovery "may include the particular officer's recent traffic
stops and . . . field interrogations and observations."  Id.
"[A] defendant may seek such discovery by means of a motion
filed pursuant to Mass. R. Crim. P. 14 (a) (2)."  Id.  In such a
motion, a defendant may request material and relevant evidence
that is not required under the mandatory discovery provisions.
See Mass. R. Crim. P. 14 (a) (2).  The motion "must be
accompanied by 'an affidavit detailing all facts relied upon in
support of the motion and signed by a person with personal
knowledge of the factual basis of the motion.'"  Betances, 451
Mass. at 462 n.6, quoting Mass. R. Crim. P. 13 (a) (2).  The
affidavit may contain statistical data, factual allegations

---

[4] The judge was without the benefit of our decision in
Commonwealth v. Van Rader, 492 Mass. 1 (2023), and therefore
concluded that the selective enforcement protections set forth
in Long, 485 Mass. at 724-726, and its concomitant discovery
obligations, were inapplicable to pedestrian stops and were
limited to traffic stops.

concerning the stop, or other relevant information.  Betances,
supra.  In deciding whether to allow the motion, a reviewing
judge must determine "whether the defendant has made a
'threshold showing of relevance.'"  Bernardo B., 453 Mass. at
169.[5]

It is important to bear in mind that, at the discovery
stage, a defendant is not required to establish a prima facie
case of discrimination.  See Bernardo B., 453 Mass. at 169.  "To
adopt the higher burden . . . would place criminal defendants in
the untenable position of having to produce evidence of
selective enforcement in order to obtain evidence of selective
enforcement."  Id.

For example, in Bernardo B., 453 Mass. at 165, a juvenile
moved for discovery of any written policy that had been
promulgated by the office of the district attorney to assist in
deciding whether to prosecute cases involving sexual activity
among children.  The juvenile asserted that this information was
relevant to his claim of selective prosecution on the basis of

---

[5] In other jurisdictions, a defendant's discovery burden in
a selective enforcement action has been described variously as
requiring "'some evidence' of discriminat[ion]," United States
v. Washington, 869 F.3d 193, 220-221 (3d Cir. 2017), cert.
denied, 138 S. Ct. 713 (2018); "a colorable basis" for a belief
that discriminatory law enforcement occurred, State v. Halsey,
340 N.J. Super. 492, 501 (App. Div. 2001), quoting State v.
Kennedy, 247 N.J. Super. 21, 25 (App. Div. 1991); or "something
more than mere speculation," United States v. Sellers, 906 F.3d
848, 855 (9th Cir. 2018).

gender. Id. at 169-170. The motion judge found that the juvenile's request was supported by evidence that "both the boy and the three complaining witnesses appeared to have engaged in 'mutually consensual acts of oral sex,' . . . all four children were under the age of consent, and the district attorney refused the request of the boy's counsel that the girls be charged with statutory rape of the boy." Id. at 170. We affirmed the judge's finding that the requested discovery was relevant and material to a claim of gender-based selective prosecution. Id. at 174-175. The request was "properly supported" and not unduly burdensome to the Commonwealth. Id. at 174.

Here, however, we discern no abuse of discretion in the judge's decision to deny the defendant's motion for discovery to support a claim of selective prosecution on the basis of race. The sum total of the defendant's motion was a statement that Caucasian police officers stopped a Black man to investigate a recent shooting. The judge was within her discretion to deny the motion seeking discovery based only on the defendant's membership in a protected class. To make a threshold showing of relevance, more is required.

The Van Rader case, by contrast, provides an illustration of an initial showing of selective enforcement sufficient to order discretionary discovery. See Commonwealth v. Van Rader, 492 Mass. 1 (2023). A judge had allowed the defendant's motion

for all arrest reports and FIOs submitted by the arresting officers for a two-year period preceding the incident.  Id. at    n.3.  The motion was supported by defense counsel's affidavit averring that a Boston police department study had found that "Black men in the city of Boston were more likely to be targeted for police-civilian encounters such as stops, frisks, searches, observations and interrogations."  Id.  See Commonwealth v. Warren, 475 Mass. 530, 539 (2016).  In addition, counsel cited an Associated Press report that "at least 71% of all street level civilian-police encounters involved minorities while minorities make up about 25% of the Boston population." Van Rader, supra.  Counsel also averred that, in his experience, officers assigned to the youth violence strike force "consistently stop, search and arrest Black and Brown people at higher rates" than the department-wide statistics.  Id.  See Commonwealth v. Dilworth, 485 Mass. 1001, 1001, 1002-1003 (2020) (single justice properly denied Commonwealth's petition pursuant to G. L. c. 211, § 3, for relief from discovery order seeking police department records concerning social media surveillance where, "[b]ased on preliminary information gathered by the defense, the targets of this type of investigation are almost exclusively people of color, and within this are also disproportionately Black").

b.  Prosecutor's closing argument.  The defendant also argues that certain of the prosecutor's remarks were improper, ad hominem attacks on trial counsel, including counsel's competence and credibility.  The defendant argues that, because of the extensive number of negative statements about defense counsel's statements, repeated emphasis of counsel's name, and disparaging of counsel's purported statements, a new trial is required.  Where, as here, there was no objection to the challenged statements at trial, we review to determine whether there was error and, if so, whether it created a substantial risk of a miscarriage of justice.  Commonwealth v. Miranda, 458 Mass. 100, 114 (2010), cert. denied, 565 U.S. 1013 (2011).

A prosecutor is entitled to marshal the facts in evidence, and any fair inferences drawn from those facts, and to argue "forcefully for the defendant's conviction" (citation omitted).  Commonwealth v. Rutherford, 476 Mass. 639, 643 (2017).  Although a prosecutor may respond fairly to points made during a defendant's closing argument and may criticize defense tactics, personal attacks on defense counsel's character and qualifications, and disparaging personal remarks about counsel, are not permitted.  See Commonwealth v. Teixeira, 486 Mass. 617, 630 (2021); Commonwealth v. Lewis, 465 Mass. 119, 130 (2013).

Here, among other things, the defendant contends that the "prosecutor interjected his opinion that opposing counsel was

not only wrong in her interpretation of the law in this case, but that he was 'very excited' to take advantage of her perceived incompetence in future adversarial contests."  The defendant maintains that the prosecutor's "improper argument misstated the defense attorney's theory of the case by personally attacking . . . defense counsel's legal acumen."

The challenged statements arose in the context of the defendant's pursuit of a Bowden defense, which was based, in part, on the investigating officers' failure to seek a search warrant for the defendant's cell phone and to test his sweatshirt for gunshot residue.  See Bowden, 379 Mass. at 485-486.  Defense counsel pursued this theme through cross-examination and, in particular, during an intensive cross-examination of Longo.  Counsel also argued in closing that the police conducted a "shoddy" investigation, because they did not examine evidence that might have linked the defendant to the scene of the shooting or to having fired a gun at that time.

Counsel focused repeatedly on the fact that police had not sought a warrant to search the defendant's cell phone, notwithstanding that, as counsel pointed out, such a device "can pretty much tell you where you are any minute of any day."[6]

_____

[6] On cross-examination, Longo explained why he had not sought a warrant to search the defendant's cell phone, "I don't believe in this case we had probable cause to get into [the

Counsel stated that her cell phone sends her messages indicating that her "parked car location has been updated." Counsel urged the jury to disregard Longo's explanation that he had not applied for a search warrant due to a lack of probable cause to search the device. Instead, she argued that the detective could and should have sought a search warrant regardless of his view of the likelihood that the application would be allowed and the warrant would issue. Counsel argued, "[I]t's not really . . . Longo's decision whether or not he has probable cause. He may feel that he doesn't but he still has every right to request a search warrant. And then a clerk-magistrate makes the decision whether or not he has probable cause to go into that cell phone and take a look."

With respect to the defendant's assertions about the failure to obtain a warrant, the prosecutor remarked in his closing:

> "[Defense counsel] also said the cell phone could have been done for what's called CSLI [cell site location information] or cell tower location. Now, . . . Longo testified that sometimes you don't necessarily get that if the phone's not being used. And in a back-and-forth between . . . Longo and [defense counsel], they discussed what kind of probable cause you need to get it. A conversation that frankly made me very excited for the next time I have a motion about cell phone search warrants with [defense counsel], because she's trying to tell you that you can just get one for no reason."

---

defendant's cell] phone, so we never attempted to do that search warrant. I believe it would have been denied."

The prosecutor concluded his argument by telling the jury that reasonable doubt "doesn't mean completely farfetched, tinfoil-hat-wearing doubt."

The prosecutor was entitled, based on Longo's testimony, to argue that the police had a legitimate reason not to apply for a warrant to search the defendant's cell phone. The prosecutor also was permitted to respond to defense counsel's misleading argument that a police officer who believed that the facts did not meet the standard to establish probable cause nonetheless should apply for a search warrant attesting to the existence of probable cause. See Commonwealth v. Nelson, 460 Mass. 564, 568-569 (2011) (affiant seeking search warrant must sign oath under penalties of perjury that search would be supported by probable cause). The prosecutor's snide remark that he would be "very excited" to litigate future search warrant cases with defense counsel was better left unsaid. "[E]nthusiatic rhetoric, strong advocacy, and excusable hyperbole[, however,] are not grounds for reversal" (quotation omitted). Commonwealth v. Wilson, 427 Mass. 336, 350 (1998), quoting Commonwealth v. Sanna, 424 Mass. 92, 107 (1997). "The jury are presumed to have a certain measure of sophistication in sorting out excessive claims on both sides." Wilson, supra.

The prosecutor's characterization of the defense as "tinfoil-hat-wearing" reasonable doubt, on the other hand,

crossed the line. See Lewis, 465 Mass. at 132-133, quoting Commonwealth v. Kozec, 399 Mass. 514, 519 n.9 (1987) ("Defense counsel's improper argument does not furnish the prosecutor 'a license to indulge in improper argument'"). "A prosecutor may address a particular point in defense counsel's closing argument as a sham, but [the prosecutor] may not characterize the entire defense as such." Lewis, supra at 130, citing Commonwealth v. McCravy, 430 Mass. 758, 764 (2000).

In context, the prosecutor's improper remark did not create a substantial risk of a miscarriage of justice and does not warrant a new trial. "Remarks made during closing argument are considered in the context of the entire argument, together with the evidence presented at trial and the judge's instructions to the jury." Commonwealth v. Huang, 489 Mass. 162, 180 (2022). The judge instructed the jury that closing arguments are not evidence, and that it was their duty to determine the facts and to apply the facts to the law as explained by the judge. The judge also properly instructed on the meaning of reasonable doubt. In light of these instructions, and the strength of the Commonwealth's case, we are confident that the ill-advised comment would have had no effect on the jury's verdict.

3. Conclusion. As there was no abuse of discretion in denying the defendant's motion for discovery and no error warranting a new trial, the judgment is affirmed.

<u>So ordered</u>.

<u>So ordered</u>.